James Allen LEE, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–99–00028–CR.

Court of Appeals of Texas,
Tyler.

April 28, 2000.

Rehearing Overruled May 31, 2000.

Craig D. Caldwell, Rusk, for Appellant.

Elmer C. Beckworth, Rusk, for Appellee.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

WORTHEN, Justice.

James Allen Lee appeals his convictions for one count of aggravated assault and two counts of injury to a child. After a jury trial on the issue of guilt, the trial court sentenced Appellant to forty years' imprisonment on each count. In seven issues, Appellant contends that the evidence is insufficient to support the convictions, certain evidence is inadmissible, and the trial court erred in allowing improper jury argument by the State. We affirm the trial court's judgment.

## FACTS

In March of 1998, Appellant was living with Kelley McDonald, their two daughters, and Kelley's three-year-old son by a previous marriage, M.D. Kelley testified that on Tuesday, March 3, she went to work while Appellant stayed home with the three children. When she returned home from work, Appellant, while grinning, said that M.D. had hurt himself. Appellant told her that he was cleaning the bathtub with bleach and hot water and he told M.D. to get ready to take a bath. Appellant explained to her that M.D. stepped into the bathtub and burned his feet. Kelley wanted to take M.D. to a doctor but Appellant refused, saying the burns would heal. Appellant also told her he had called East Texas Medical Center and described the injury to someone who told him to put Neosporin and Aloe Vera on the injured feet and keep them wrapped and they would probably heal in a couple of days. Kelley testified that Appellant was the dominant person in the relationship and that she did not take M.D. to a doctor because Appellant had previously threatened to kill her and she was afraid of him. She testified that Appellant laughed about M.D.'s injuries many times that week.

Appellant worked for a general contractor, Marty Smith, on Wednesday, March 4, Thursday, March 5, and Friday, March 6. Smith picked Appellant up at Appellant's house each morning at 6:00 or 6:30. They worked together through each day, until about 4:30 p.m. One evening, possibly Thursday evening, Appellant also worked for Smith at Smith's house. On that evening, Kelley came by Smith's house with M.D. Smith and his girlfriend Tanya Bobbitt, saw M.D.'s feet. Smith testified that there were blisters across the top of the feet and there was some peeling skin. Bobbitt testified that the bottoms of the child's feet were peeling in layers. She testified that Kelley and Appellant both told her the injury happened when the boy was getting in the bathtub with hot water and bleach in it. She stated that they wanted to know if she and Smith had any medication to put on the boy's feet. Bobbitt gave Kelley some leaves from an Aloe Vera plant to use on the burns.

On March 6, Kelley's father, Michael McDonald, went to Kelley's house. M.D. was there with a babysitter, Patricia Vickery. After seeing that M.D.'s feet were badly burned, McDonald called for emergency medical personnel to have M.D. taken to the hospital. At the hospital, Deputy Michael Lunsford of the Smith County Sheriff's Department spoke to M.D. The boy told Deputy Lunsford that his stepfather had placed him in the bathtub and turned on the hot water and then poured bleach into the tub.

Also on March 6, Bobbitt received a telephone message that M.D. had been taken to a Dallas hospital. She relayed the message to Appellant when she picked up Smith and Appellant from their work site that day. Appellant wanted to go by his house. On the way, they passed a car that Appellant noted was an unmarked police car. After going into his house, Appellant returned to the Smith vehicle and said that Protective Services had been there. He asked Bobbitt if she would say she is his sister in order to get custody of his children so that Kelley's family would not get custody. She refused. Smith took Bobbitt home and then took Appellant where he wanted to go.

Kelley went to the hospital on the 6th, but M.D. did not want to see her. On that day, Kelley told the investigating officer that the injury occurred on the morning of March 4. However, she later recalled that, on March 4, Appellant had not stayed with the children. On that day, she was late for work because her babysitter, Patricia Vickery, was late getting to her house. Because she was afraid of Appellant, Kelley told the investigating officer that Appellant had not been abusive to her or the children.

Ann Denson, M.D.'s paternal grandmother, testified that she received a message on March 6 from her son Donald, M.D.'s father, that M.D. was in a hospital in Dallas. While she was getting ready to go to Dallas, Appellant called her. He told her that, while Kelley was cleaning the bathtub, which she had filled with hot water and bleach, M.D. fell in. He stated that he was there at the time. He also told her that they took M.D. to a doctor and had been treating the burns with Aloe Vera all week. He instructed her to tell M.D. that he loves him and that she and her husband should attempt to get custody of M.D. if the boy's father cannot.

Dr. Harry Wilkins is a trauma surgeon who saw M.D. in the emergency room on March 6. He testified that M.D. had second and third degree burns on the top of both feet. He stated that such injuries have the potential for causing protracted loss of use of the feet. He explained that the boy's injuries were not consistent with his having stepped into a tub of hot water, or with any immersion type injury. The condition of his feet were more consistent with hot water having been poured onto the feet. These injuries, which were at least forty-eight hours old at that time, were the type for which a parent should seek medical attention for. Wilkins testified that the injury could have occurred as early as March 3. After the wounds were cleaned and dressed, the boy was sent to Parkland Hospital in Dallas.

Dr. Seth Asser, a pediatric critical care specialist, studied M.D.'s medical records and reviewed the photographs of his feet. He testified that the boy's injuries could not possibly have been caused by immersion. He also stated that the injuries were too extensive to have been the result of the three-year-old accidentally turning on the hot water. Focusing on the exact location and extent of the burns, Asser concluded that at least the right foot had been stable while under the hot water. With a water temperature of 127 degrees, the boy's feet would have to remain under the water for slightly less than thirty to forty-five seconds to produce the injuries he suffered. Asser explained that pain occurs at a much lower temperature than burning. A three-year-old processes pain information immediately and, without thinking, would pull his feet away. Asser opined that M.D.'s was a most painful kind of burn. Asser also stated that M.D.'s injury was not consistent with something spilling onto him off the stove.

Bill Sinclair, a plumber, tested the water temperature in Appellant's home. He testified that the water initially came out of the pipes at seventy-two degrees and reached 127 degrees in one minute.

The State also introduced a letter from Appellant to the trial judge written at a time when both he and Kelley were in jail. In the letter, he stated that he wanted to clear Kelley. He said she was not at home at the time the injury to M.D. occurred, but that he was. He also said, "It's all my fault that this came on."

Pursuant to Count I of the indictment, the jury found Appellant guilty of injury to a child by recklessly causing serious bodily injury to M.D., a child younger than fifteen years of age, by scalding or burning his feet or ankles with hot water. Pursuant to Count II of the indictment, the jury found Appellant guilty of aggravated assault by intentionally or knowingly causing serious bodily injury to M.D. by scalding or burning him with hot water. Finally, pursuant to Count III of the indictment, the jury

found Appellant guilty of injury to a child, without specifying the paragraph. Paragraph A of Count III alleged that Appellant, on or about March 4, 1998, intentionally or knowingly by act or omission caused serious bodily injury to M.D., a child younger than fifteen years of age, by failing to seek medical attention for M.D. or by preventing Kelley McDonald from seeking medical treatment for M.D. for scalding injuries or burns and Appellant assumed care, custody, or control of M.D. Paragraph B of Count III alleged that Appellant, on or about March 5, 1998, intentionally or knowingly by act or omission caused serious bodily injury to M.D., a child younger than fifteen years of age, by failing to seek medical treatment for M.D. or by preventing Kelley McDonald from seeking medical treatment for M.D. for scalding injuries or burns and Appellant assumed care, custody, or control of M.D., or Kelley McDonald was the mother of M.D.

## OUTCRY WITNESS

In his first issue, Appellant contends that the trial court erred in ruling that Deputy Lunsford could testify as the outcry witness pursuant to code of criminal procedure article 38.072. Where the requirements of that article are met, a statement by a child that would otherwise be inadmissible hearsay, is admissible. Appellant argues that the child made a statement to his babysitter, Patricia Vickery, before he spoke to Deputy Lunsford. Therefore, he contends, the statement to Vickery should be considered the outcry statement, not the statement to Lunsford.

The trial court is the exclusive trier of fact in a hearing to suppress evidence. *Taylor v. State*, 604 S.W.2d 175, 178 (Tex.Cr.App.1980). The trial court has broad discretion in determining the admissibility of evidence and the appellate court will not reverse unless a clear abuse of discretion is shown. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex.Cr.App.1990). Article 38.072 provides for the admission of

hearsay testimony in the prosecution of an offense committed against a child twelve years of age or younger. Tex.Code Crim. Proc. Ann. art. 38.072 (Vernon Pamph. 2000). That article applies only to statements that describe the alleged offense that were made by the child against whom the offense was allegedly committed and were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. *Id.* The statement must be more than words which give a general allusion that something in the area of child abuse was occurring. *Garcia*, 792 S.W.2d at 91. The evidence must clearly show that the victim described the alleged offense in some discernible manner to the witness. *Id.*

The record shows that before M.D. was transported to the hospital where Lunsford spoke to him, Vickery asked him how he burned his feet. He told her, "Well, I got in the bathtub, started my water and it was too hot, you know, and they told me." It is undisputed that Vickery was over the age of eighteen at the time. The question is whether M.D.'s statement to her is the type of statement that describes the alleged offense as contemplated by article 38.072. We conclude that it is not.

M.D. told Vickery, in effect, that he injured himself. Such a statement does not describe an offense at all. At most, it was one explanation of how his injuries occurred; an explanation that could not have been accurate if the medical experts are correct. M.D.'s statement to Vickery did not even rise to the level of "a general allusion that something in the area of child abuse was occurring." The evidence does not show that M.D. described the alleged offense to Vickery in a discernible manner. Accordingly, the trial court did not err in designating Lunsford as the outcry witness and allowing him to testify as to M.D.'s statement to him. We overrule Appellant's first issue.

## HEARSAY

■ In his second issue, Appellant contends that the trial court erred in admitting Tanya Bobbitt's testimony regarding Kelley's statement about how M.D. was injured because it was hearsay. The State responds that the testimony, which is admittedly hearsay, is nonetheless admissible under the co-conspirator exception to the hearsay rule. The State asserts that Kelley and Appellant conspired to commit injury to a child by failing to seek medical treatment. The complained-of statement, the State reasons, was made to avoid detection, was thus made in furtherance of the conspiracy, and, therefore, is admissible.

The prosecutor asked Bobbitt the following question: "Did either one of them say anything about how the burns had occurred?" Appellant objected on the basis that the question called for hearsay. The State claimed the answer was admissible under the co-conspirator exception to the hearsay rule. The trial court overruled Appellant's objection without stating its reasoning. Bobbitt then testified as follows:

[Prosecutor]: Ms. Bobbitt, specifically did either one of them tell you how it happened?

[Bobbitt]: There was a tub of hot water with bleach in it and the child got in it.

[Prosecutor]: Do you remember which one it was that told you that?

[Bobbitt]: I am really not sure.

[Prosecutor]: All right. Did you have any further discussion about the injuries with either ... Ms. McDonald or Mr. Lee at that time?

[Bobbitt]: No. Both of them—I think both of them basically in a round about way told me he was getting in the bathtub with hot water and bleach.

■ An out-of-court statement offered to prove the truth of the matter asserted is not hearsay if it is offered against a party and is a statement by a co-conspirator made during the course of, and in furtherance of, the conspiracy. TEX.R. EVID. 801(e)(2)(E). Statements that are made in furtherance of a conspiracy include those made (1) with intent to induce another to deal with co-conspirators or in any other way to cooperate with or assist co-conspirators; (2) with intent to induce another to join the conspiracy; (3) in formulating future strategies of concealment to benefit the conspiracy; (4) with intent to induce continued involvement in the conspiracy; or (5) for the purpose of identifying the role of one conspirator to another. *Fairow v. State*, 920 S.W.2d 357, 362 (Tex.App.—Houston [1st Dist.] 1996), *aff'd*, 943 S.W.2d 895 (Tex.Cr.App.1997). Conversely, statements that are not in furtherance of a conspiracy, and thus remain hearsay, include those that are (1) casual admissions of culpability to someone the declarant had individually decided to trust; (2) mere narrative descriptions; (3) mere conversations between conspirators; or (4) "puffing" or "boasts" by co-conspirators. *Id.*

Assuming there was a conspiracy to commit injury to a child by failing to seek medical treatment, as the State asserts, a statement regarding how the boy was injured does not serve to further such a conspiracy. Stating that M.D. injured himself does not, in any way, facilitate a conspiracy to fail to seek medical treatment for his injuries. Accordingly, the co-conspirator exception to the hearsay rule is not available to the State as a basis for the admissibility of the complained-of statement. In the absence of a valid exception to the hearsay rule, it was error to admit the testimony.

■ Having found error, we must determine if that error was harmful. The admission of inadmissible hearsay constitutes non-constitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Cr. App.1998). Non-constitutional errors that do not affect substantial rights are disregarded. TEX.R.APP. P. 44.2(b). This Court

must examine the record as a whole to determine whether the error influenced the jury verdict. *Johnson*, 967 S.W.2d at 417. An error is harmless if the reviewing court determines that no substantial rights of the defendant were affected because the error did not influence or had only a slight influence on the verdict. *Fowler v. State*, 958 S.W.2d 853, 865 (Tex.App.—Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex.Cr.App. 1999). However, a substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Cr.App.1997). If one cannot say that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. *Fowler*, 958 S.W.2d at 865.

The complained-of statement was exculpatory as to Appellant. At most, in light of other testimony that Appellant directed Kelley's actions, the jury might infer that Appellant instructed Kelley to make the statement. Thus, it could have been construed as an attempt to cover up the truth. Regardless, Appellant's explanation of the cause of M.D.'s injuries came before the jury three other times. Ann Denson, Marty Smith, and Kelley all testified that Appellant told them that M.D. caused his own injuries. We determine that the error did not influence, or had only a slight influence on the verdict. *See id.* Therefore, as no substantial rights of Appellant were affected, the error in allowing the complained-of testimony was harmless. Accordingly, we overrule Appellant's second issue.

## LEGAL SUFFICIENCY

In his seventh issue, Appellant contends the evidence is legally insufficient to support the convictions. Regarding Count I, Appellant asserts the State did not prove that he caused the injury to M.D., or that he acted recklessly. Regarding Count II, Appellant asserts the State did not prove that he caused the injury to M.D., or that he acted intentionally or knowingly. As to both Counts I and II, Appellant asserts that M.D. injured himself. Regarding Count III, Appellant asserts the State did not prove he acted intentionally or knowingly.

The standard for reviewing the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The trier of fact is the sole judge of the weight and credibility of the witnesses and may believe or disbelieve any part of any witness's testimony. *Williams v. State*, 692 S.W.2d 671, 676 (Tex.Cr.App.1984). The jury is entitled to draw reasonable inferences from the evidence. *Benavides v. State*, 763 S.W.2d 587, 588–89 (Tex.App.—Corpus Christi 1988, pet. ref'd). The evidence is measured for sufficiency by looking at the indictment as incorporated in the court's charge to the jury. *Fisher v. State*, 887 S.W.2d 49, 53 (Tex.Cr.App.1994) (op. on reh'g).

A person commits injury to a child under penal code section 22.04 if he intentionally, knowingly, or recklessly, by act or omission, causes serious bodily injury to a child. TEX. PEN.CODE ANN. § 22.04(a)(1) (Vernon Supp.2000). An omission that causes serious bodily injury is conduct constituting an offense if the actor has assumed care, custody, or control of a child. TEX. PEN.CODE ANN. § 22.04(b)(2) (Vernon Supp.2000). A person commits an aggravated assault under penal code section 22.02(a)(1) if he intentionally or knowingly causes serious bodily injury to another. TEX. PEN.CODE ANN. § 22.02(a)(1) (Vernon 1994).

Proof of a culpable mental state almost invariably depends upon circumstantial evidence. *Morales v. State*, 828 S.W.2d 261, 263 (Tex.App.—Amarillo 1992), *aff'd*, 853 S.W.2d 583 (Tex.Cr.App. 1993). Ordinarily, the culpable mental

state must be inferred from the acts of the accused or the surrounding circumstances, which include not only acts, but words and conduct. *Ledesma v. State,* 677 S.W.2d 529, 531 (Tex.Cr.App.1984); *Morales,* 828 S.W.2d at 263. Both injury to a child and aggravated assault are result-oriented offenses. *Alvarado v. State,* 704 S.W.2d 36, 39 (Tex.Cr.App.1985) (injury to a child); *Sneed v. State,* 803 S.W.2d 833, 836 (Tex. App.—Dallas 1991, pet. ref'd) (aggravated assault). In a result oriented offense, it is not enough for the State to prove that the defendant engaged in conduct with the requisite criminal intent. The State must also prove that the defendant caused the result with the requisite criminal intent. *Cook v. State,* 884 S.W.2d 485, 490 (Tex.Cr. App.1994). Where the evidence is sufficient to show intentional and knowing conduct, it is sufficient to show the lesser culpable mental state of recklessness. TEX. PEN.CODE ANN. § 6.02(e) (Vernon Supp.2000); *Bell v. State,* 693 S.W.2d 434, 438 (Tex.Cr.App.1985).

### Counts I and II

■ Under Count I, the indictment alleged that Appellant committed injury to a child by intentionally or knowingly causing serious bodily injury to M.D. The jury charge gave the jury the option of finding that Appellant had caused serious bodily injury to M.D. intentionally or knowingly, recklessly, or with criminal negligence. The jury found that Appellant recklessly caused serious bodily injury to M.D. Accordingly, in reviewing the jury's finding under Count I, we must determine if the State proved that Appellant caused M.D.'s injury and that he acted recklessly.

Under Count II, the indictment alleged that Appellant committed aggravated assault by intentionally or knowingly causing serious bodily injury to M.D. While the indictment alternatively alleged that Appellant was guilty of causing serious bodily injury by use of a deadly weapon, the jury merely found Appellant guilty "as alleged in Count II of the indictment." No sepa-

rate deadly weapon finding was made and no such finding was entered in the judgment. We therefore will restrict our review to the jury's first option under Count II. Accordingly, under Count II, we must determine whether the State proved that Appellant intentionally or knowingly caused serious bodily injury to M.D.

Deputy Lunsford testified that, while in the emergency room, M.D. told him that Appellant placed him in the bathtub, turned on the hot water, and then poured bleach into the tub. M.D. said that Appellant then made M.D. sit down in the tub.

Dr. Asser testified unequivocally that M.D.'s injuries were not caused by immersion or by the child accidentally turning on the hot water, or by something spilling onto him from the stove. By focusing on the exact location and extent of the burns, Dr. Asser concluded that at least the right foot had been stable while under the water. He testified that there were very few places on M.D.'s feet where the water trailed off or dropped or moved very much. He explained that at 127 degrees, it takes slightly less than thirty to forty-five seconds to produce the kind and depth of injury suffered by M.D. Further, a three-year-old would process pain information immediately and would pull his feet away.

Dr. Wilkins, who saw M.D. in the emergency room, while acknowledging that there is a reasonable doubt as to what caused the child's injury, testified that M.D.'s injury was not consistent with immersion type injuries, such as stepping into a tub full of hot water. He testified that it is more consistent with hot water being poured onto the feet. He also stated that the injury is consistent with something spilling on top of the feet.

Kelley McDonald, M.D.'s mother, testified that on the day M.D. was injured she went to work while Appellant stayed home with M.D. and their two daughters. Appellant's letter to the trial judge verified that he was present when M.D. was in-

jured and Kelley was not at home. Kelley further testified that when she came home from work on the day M.D. was injured, Appellant, while grinning, smiling, and laughing, told her that M.D. had hurt himself by burning his feet. Kelley testified that Appellant laughed about the injuries many times that week.

Marty Smith testified that on Friday, March 6, Appellant seemed more worried about law enforcement than anything else. Tanya Bobbitt testified that, on March 6, Appellant asked her if she would say she was his sister in order to get custody of the children because he did not want Kelley's family to get them. This behavior indicates he was worried about possible repercussions resulting from the fact that law enforcement officials now knew of M.D.'s injuries.

Both Michael McDonald and Ann Denson testified that M.D. always checked the bath water before getting into the bathtub.

Viewing this evidence in the light most favorable to the verdict, we conclude the jury could have found beyond a reasonable doubt that Appellant caused M.D.'s injury. Appellant was at home with M.D. at the time of the injury. Further, the medical testimony regarding the nature of the injuries indicates that they were not the result of an accident or of the child's own actions. Rather, M.D.'s feet were held stable under hot, running water for approximately thirty to forty-five seconds. Accordingly, the jury could have found that Appellant acted knowingly and intentionally to cause M.D.'s injury. Having shown that Appellant acted knowingly and intentionally, the State necessarily also proved that Appellant acted recklessly. *Bell*, 693 S.W.2d at 438. We conclude the evidence is legally sufficient to support the convictions under Counts I and II.

### Count III

■ Under Count III, Appellant was alleged to have caused serious bodily injury to M.D. by failing to seek medical attention for him, or by preventing Kelley from seeking medical attention for M.D., and Appellant assumed care, custody, or control of M.D., or Kelley was M.D.'s mother. Appellant asserts that the State did not prove he acted intentionally or knowingly.

Dr. Wilkins testified that when he saw M.D. on the afternoon of the 6th, the wounds were at least forty-eight hours old and could have occurred as early as March 3rd. On the evening of the 5th, Marty Smith told Appellant that M.D. should be taken to a doctor because his injuries were more serious than an aloe vera home remedy could cure. Smith testified that Appellant was nervous and worried about law enforcement on the 6th, the day M.D. was finally taken to the hospital. Bobbitt testified that the injuries were severe enough to require medical attention. Ann Denson testified that she would have taken her child to the emergency room immediately in this instance. Dr. Wilkins also testified that M.D.'s injuries were of a type that parents should seek medical attention for.

Kelley testified that she repeatedly told Appellant that they should take M.D. to a doctor and he always refused. There was evidence that, on the evening of March 5th, M.D. could not walk due to the severity of his injuries. Three people who saw the injuries that week, Smith, Bobbitt, and Kelley, felt that medical attention was necessary. Yet, Appellant laughed about the injuries. Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could have found beyond a reasonable doubt that Appellant acted knowingly and intentionally when he failed to seek medical attention for M.D. *See Fuentes v. State*, 880 S.W.2d 857, 860 (Tex. App.—Amarillo 1994, pet. ref'd) (Defendant refused to allow wife to take baby to hospital; baby's poor condition was obvious to lay person.). Accordingly, there is legally sufficient evidence to support the conviction under Count III. We overrule Appellant's seventh issue.

### FACTUAL SUFFICIENCY

■ In his sixth issue, Appellant asserts that the evidence is factually insuffi-

cient to support the convictions. Although unclear, apparently Appellant is attacking the sufficiency of the evidence as to the causation elements in Counts I and II. He asserts that the child's injury was likely the result of an accident caused by M.D. himself.

When reviewing the factual sufficiency of the evidence, we view all the evidence, but not in the light most favorable to the prosecution. *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Cr.App.1997). We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Cr.App. 1996). In conducting this analysis, our duty is to examine the trier of fact's weighing of the evidence. *Scott v. State,* 934 S.W.2d 396, 398 (Tex.App.—Dallas 1996, no pet.). We consider all of the evidence in the record related to an appellant's sufficiency challenge, comparing the weight of the evidence that tends to prove guilt with the evidence that tends to disprove it. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Cr.App.1997). Because we consider all of the evidence in conducting a factual sufficiency review, we necessarily consider any reasonable alternative hypotheses raised by the evidence. *Ates v. State,* 21 S.W.3d 384, 391 (Tex.App.—Tyler 2000, no pet. h.); *Richardson v. State,* 973 S.W.2d 384, 387 (Tex.App.—Dallas 1998, no pet.). However, the mere existence of a reasonable alternative hypothesis does not render the evidence factually insufficient. *Ates,* at 391; *Richardson,* 973 S.W.2d at 387.

Because the jury is the sole judge of the facts, we must give deference to jury findings. *Cain,* 958 S.W.2d at 407. What weight to give contradictory testimonial evidence is within the sole province of the jury, because it turns on an evaluation of credibility and demeanor. *Id.* at 408–09. We are not free to reweigh the evidence and set aside a jury verdict merely because we feel that a different result is

more reasonable. *Id.* at 407. We cannot reverse the verdict if reasonable minds could differ about the conclusions to be drawn from the evidence. *Richardson,* 973 S.W.2d at 387. We find the evidence factually insufficient only where necessary to prevent manifest injustice. *Cain,* 958 S.W.2d at 407. A decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the State. *Id.* at 410. Additionally, a decision is not manifestly unjust merely because the defense has presented a reasonable alternative hypothesis. *See Richardson,* 973 S.W.2d at 387.

To review the factual sufficiency of the evidence of causation under Counts I and II, we must consider, in addition to the evidence supporting the verdict as set out in our discussion of issue seven, all other evidence relevant to the element of causation.

Marty Smith testified that Appellant gave him more than one explanation for M.D.'s injuries, including the version that Appellant was cleaning the bathtub and M.D. got in and scalded himself. Smith described Appellant's explanations as "wishy-washy." Both Appellant and Kelley told Tanya Bobbitt that M.D. was hurt when he got in the bathtub with hot water and bleach. Ann Denson testified that Appellant told her that, although Appellant was home at the time, M.D. was accidentally burned while Kelley was cleaning the bathtub with hot water and bleach.

Kelley testified that Appellant told her M.D. had hurt himself while Appellant cleaned out the bathtub with hot water and bleach. He told her M.D. stepped into the bathtub and burned his feet. While at the hospital, Kelley had told a deputy that Appellant had not been abusive to her or the children.

While the record reflects that Appellant told people that M.D. injured himself, the medical testimony specifically rebuts that alternative defensive hypothesis. The weight to give this contradictory evidence

is within the sole province of the jury and we must give deference to its findings. *See Cain,* 958 S.W.2d at 407–09. The jury also had before it evidence that Kelley was not present in the home at the time of the injury and that Appellant was alone with the children at that time. If that evidence is believed, Kelley could not have caused M.D.'s injuries as Appellant contends. Again, the weight to give this contradictory evidence is within the sole province of the jury. *See id.* We cannot say that the jury's failure to give weight to Appellant's second alternative hypothesis should be disturbed.

Considering all the evidence, comparing the weight of the evidence tending to prove guilt with the evidence tending to disprove it, we conclude that the jury's determination on the issue of causation under Counts I and II is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Santellan,* 939 S.W.2d at 164; *Clewis,* 922 S.W.2d at 129. The verdict is not manifestly unjust, but rather, is supported by factually sufficient evidence. *See Cain,* 958 S.W.2d at 407. Accordingly, we overrule Appellant's issue number six.

### EXTRANEOUS OFFENSE EVIDENCE

In his third issue, Appellant asserts that the trial court erred in allowing evidence of an extraneous offense which he contends was more prejudicial than probative. Kelley testified on direct examination that Appellant refused to take M.D. to a doctor and that she did not take M.D. to a doctor because she was afraid of Appellant. On cross-examination, defense counsel asked her if she was afraid of Appellant and she answered affirmatively. On redirect, the prosecutor asked Kelley why she was afraid of Appellant and she responded, "Because he threatened to kill me." Appellant asserts that Kelley's testimony about the threat constitutes inadmissible evidence of an extraneous offense.

An accused may not be tried for some collateral crime or for being a criminal generally. *Williams v. State,* 662 S.W.2d 344, 346 (Tex.Cr.App.1983). However, evidence of other crimes, wrongs, or acts may be admissible if it has relevance apart from its tendency to prove the character of a person to show that he acted in conformity therewith. Tex.R. Evid. 404(b). A party may introduce such evidence where it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R. Evid. 401. However, if the proper objection is made, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, that is the tendency of the evidence to suggest a decision on an improper basis. Tex.R. Evid. 403; *Montgomery v. State,* 810 S.W.2d 372, 388–89 (Tex.Cr.App.1990) (op. on reh'g). The appellate court reviews the trial court's balancing of probativeness and prejudice under an abuse of discretion standard. *Montgomery,* 810 S.W.2d at 390.

Under Count III, Appellant was alleged to have committed injury to a child by preventing Kelley from seeking medical attention for M.D. Evidence that Appellant had, in the recent past, threatened to kill Kelley was highly probative of his ability to control her actions. By eliciting testimony about the basis for Kelley's fear of Appellant, the State provided the jury with an explanation of how Appellant prevented Kelley from seeking medical attention for M.D. This evidence was directly related to the allegation the State was required to prove under Count III. Therefore, a decision based on this evidence would not be a decision on an improper basis. We conclude that, as to Count III, the trial court did not abuse its discretion in admitting evidence of Appellant's threat to kill Kelley.

Appellant was tried on the aggravated assault charge and both charges of

**544**

injury to a child in a single proceeding. If Appellant wished to limit the presentation of evidence of his wrongdoing to one offense, he had the option of requesting a severance. *See* TEX. PEN.CODE ANN. § 3.04(a) (Vernon Supp.2000); *Thornton v. State,* 986 S.W.2d 615, 617 (Tex.Cr.App. 1999). Appellant filed no motion to sever. *The evidence was properly before the jury as to Count III. Therefore, it was properly admitted as to Counts I and II as well. See Glover v. State,* 956 S.W.2d 146, 148 (Tex.App.—Beaumont 1997, pet. ref'd). We overrule Appellant's third issue.

### JURY ARGUMENT

■ In his fourth issue, Appellant contends that the trial court erred in allowing the prosecutor to argue that the defense failed to call a witness. Appellant asserts that his constitutional right to remain silent was thereby violated. In closing argument, the prosecutor said, "Ladies and Gentlemen, I would submit to you had this man taken this child to a doctor that doctor would be here testifying today." Citing *Albiar v. State,* 739 S.W.2d 360 (Tex. Cr.App.1987), Appellant argues that the State was required to show that the referenced missing witness was available to testify. Accordingly, his argument continues, since the State argued that the witness did not exist, the State did not meet the Court of Criminal Appeals' requirement for such an argument to the jury.

The court in *Albiar* stated: "[A] prosecuting attorney may comment in his final jury argument on the failure of a defendant to call a competent and material witness, when it is shown that such witness was available to testify on behalf of the defendant, but was not called by the defendant to testify." *Id.* at 362–63. We note that *Albiar* does not specifically place the burden on the State to show the witness was available. Furthermore, we conclude that *Albiar* is not controlling here. The complained-of argument here is similar to the complained-of argument in *Rodgers v. State,* 486 S.W.2d 794, 797 (Tex.Cr.App.

1972). In *Rodgers,* the appellant asserted it was error for the prosecutor to argue that "he would have Jerry right here in the courtroom if Jerry existed." Finding no error, the court explained that "Jerry" had been referred to in testimony. The court held that the prosecutor may comment on the accused's failure to call a witness absent a showing that such witness was incompetent to testify or a showing that, by the exercise of due diligence, the accused could not have secured his attendance as a witness. *Id.*

Here, Ann Denson testified that Appellant told her that they took M.D. to a doctor. There was no showing that the doctor was incompetent or that, by Appellant's exercise of due diligence, the doctor's attendance as a witness could not have been secured. Accordingly, the prosecutor's comment was not improper. *Rodgers,* 486 S.W.2d at 797; *Curtis v. State,* 167 Tex.Crim. 536, 321 S.W.2d 587, 590 (1959). We overrule Appellant's fourth issue.

Appellant's issue five raises nothing for our review, therefore, we will not address it. *See* TEX.R.APP. P. 47.1.

We ***affirm*** the trial court's judgment.