# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00519-CR

**Michael Wayne Thompson, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY**
**NO. 2C11-04500, HONORABLE JOHN MICHAEL MISCHTIAN, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Michael Wayne Thompson was arrested for the offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West Supp. 2012). Using his dashboard camera, the arresting officer videotaped his pursuit of Thompson's vehicle and the subsequent traffic stop, during which he administered field sobriety tests to Thompson. Thompson moved to exclude several portions of the video. The trial court granted Thompson's motion as to some portions and denied it as to others. On appeal, Thompson contends the trial court committed reversible error by admitting one portion of the video he had objected to. We will affirm.

## BACKGROUND

On the evening of May 23, 2011, Trooper Steven Royal was on patrol on Interstate Highway 35 in Bell County. While patrolling, Royal observed Thompson driving a green Mustang convertible at a speed of over 111 miles per hour on the highway. Royal testified that he activated

his in-car video recorder and pursued Thompson. Royal said he did not immediately activate his lights or siren because he had not yet identified the make of the vehicle and he did not want to give the driver an opportunity to blend in with the other traffic. After a mile or two, Royal activated his lights when Thompson's vehicle moved to the outside lane and continued at up to 115 miles per hour. According to Royal, Thompson exited the highway, at which time Royal activated his siren and exited behind Thompson. Royal testified that although there were places to pull over, Thompson proceeded along the frontage road at 90 to 100 miles per hour. Royal described the frontage road as a two-lane two-way road on which Thompson was traveling northbound, making no effort to slow down. Royal testified that Thompson ran three stop signs without braking and passed a vehicle pulling a trailer in a no passing zone. After Thompson passed the vehicle, Royal was able to get close enough to Thompson's vehicle to read its license plate and identify it as a green Mustang convertible. Royal stated that after he activated his lights and siren, Thompson traveled two more miles along the frontage road before finally turning onto a side street and coming to a stop.

Royal testified that he had pursued Thompson for approximately four miles at speeds of more than 100 miles per hour, with his lights and siren activated for two of those miles, before Thompson pulled over. Royal stopped behind Thompson's vehicle and conducted a "felony stop," which differs from a regular stop; rather than approach the vehicle and talk to the driver, the officer has his weapon drawn and gives the driver instructions loudly from a distance. Royal described how he instructed Thompson to get out of the Mustang and secured him with handcuffs. Royal testified that he gave Thompson Miranda warnings and conducted three field sobriety tests. Royal testified that Thompson exhibited several signs of intoxication and smelled of alcohol. Royal arrested

2

Thompson and took him to the Bell County Jail. Thompson was charged with the offense of driving while intoxicated.

Before trial, Thompson moved to exclude several portions of Royal's dashboard video recording of the pursuit and sobriety tests. The trial court granted the motion with respect to numerous segments of the video, but denied several. At trial, the prosecution played the portions of the video permitted by the trial court, during which Royal was on the stand describing what was happening in the video. After the close of evidence, the jury returned a guilty verdict. Thompson elected to have the jury set punishment, which it assessed at 180 days in jail and a $2,000 fine. Thompson perfected this appeal. In a single issue, Thompson complains that the trial court erred in denying his motion to exclude the first five and a half minutes of the video, which depict the video and audio of the officer's pursuit of Thompson from its initiation until Thompson pulled over. In his motion, Thompson contends that the officer's statements in that portion of the video are an inadmissible "narrative," making the audio portion inadmissible and, as a consequence, making the video portion irrelevant. Although he moved to exclude both the audio and video of that portion of the videotape, the focus of his objection, and the basis for excluding it, was the audio component.

## DISCUSSION

In his brief, Thompson states that the specific objection he contends the court erroneously overruled can be found on page six of the reporter's record of the hearing on his motion

3

to exclude. It is evident from the reporter's record that this objection was to the first five and a half minutes of the video,[1] which consists of the following:

0:00    Royal's car parked on shoulder with traffic passing.

01:08   Thompson's car is observed, and Royal begins pursuit with no audio.

02:05   Audio commences consisting of nonspecific police radio traffic.

03:29   Royal activates his siren as he catches up to Thompson.

03:56   Royal advises the dispatcher that he is in pursuit, gives his location, and tells the dispatcher that the car he is pursuing looks like a convertible.

04:26   Royal again advises the dispatcher of his location.

04:43   Royal again advises the dispatcher of his location.

05:03   Royal tells the dispatcher the vehicle is a "ragtop" but he cannot see the license plate.

05:11   Royal gets close enough to read the license plate and provides the dispatcher with the license plate number and a description of the vehicle.

05:33   Thompson's vehicle is stopped on the side street, and Royal commences the "felony stop."

Thompson's stated objection to this portion of the video was:

---

[1] The reporter's record reflects that the trial court began watching the video and stopped it after 5:33 minutes had played in order to address the first of Thompson's objections set forth in his motion to exclude. As stated in the reporter's record, the court made the following statement after stopping the video at that point: "Okay. That was Section 025:33. And what is your objection to that section?" While the reporter transcribed the court's words as "025:33," it is apparent from the context that this was a mistranscription of the words he actually spoke, which were undoubtedly "zero to five thirty-three." This is consistent with the first of Thompson's objections to the video, which was set forth in his motion to exclude as follows: "0:00-5:33 Narrative by the Trooper."

4

> Judge, as it's stated in the Motion, narrative by the trooper. He's dictating into the video machine what's happening as it's happening, which is—as Paragraph 6 explains, is not allowed under Fisher [sic] v. State, an Austin case.

The "narrative" that Thompson apparently refers to consists of Royal's statements to the dispatcher regarding his location and the description of the vehicle he is pursuing. Royal does not say anything else during this portion of the video. Relying on *Fischer v. State*, 207 S.W.3d 846 (Tex. App.—Houston [14th Dist.] 2006), *aff'd*, 252 S.W.3d 375 (Tex. Crim App. 2008), Thompson complains that it was error to permit the jury to hear this narrative. *See id.* at 859-60 (officer's recording of his factual observations of DWI suspect contemporaneously dictated on his patrol-car videotape not admissible as it was functional equivalent of inadmissible offense report and did not constitute unreflective statement falling within present sense impression exception to hearsay rule). The State counters, first, that Royal's statements in the video do not rise to the level of the "narrative" found in *Fischer* to be the functional equivalent of an offense report and, second, that the officer's words are admissible under the present-sense impression exception to the hearsay rule. The State further argues that, even if it was error to admit that portion of the video, any such error was harmless. *See* Tex. R. App. P. 44.2(b).

Although it is not clear that Royal's remarks regarding his location are hearsay (since they do not appear to have been offered to prove the truth of the matters asserted), nor that they are in substance the functional equivalent of an offense report so as to be inadmissible under rule 803(8)(B) of the rules of evidence, we need not decide these questions because we agree that any error in admitting this portion of the video was harmless.

5

The admission of inadmissible hearsay constitutes non-constitutional error. *Lee v. State*, 21 S.W.3d 532, 538 (Tex. App.—Tyler 2000, no pet.) (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). An appellate court must disregard non-constitutional errors that do not affect substantial rights of the defendant. Tex. R. App. P. 44.2(b); *see Lee*, 21 S.W.3d at 538. A substantial right is affected when the error has a substantial and detrimental effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The error is harmful if there is a reasonable likelihood that the evidence, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion beyond a reasonable doubt. *Cardenas v. State*, 971 S.W.2d 645, 651 (Tex. App.—Dallas 1998, pet. ref'd) (citing *Jones v. State*, 833 S.W.2d 118, 127 (Tex. Crim. App. 1992)). If the error did not influence or had only a slight influence on the verdict, the error is harmless because it did not affect substantial rights of the defendant. *Lee*, 21 S.W.2d at 539. Further, if the fact to which the hearsay pertains is sufficiently proved by other competent and unobjected-to evidence, admission of the hearsay is properly deemed harmless and does not constitute reversible error. *Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986); *see Matz v. State*, 21 S.W.3d 911, 912-13 (Tex. App.—Fort Worth 2000, pet. ref'd) (concluding that any error in admitting videotape must be disregarded because video was "cumulative" of alleged victim's properly admitted testimony on same issue).

As set forth above, Royal testified, without objection, in great detail regarding the events depicted and the statements he made in the objected-to portion of the videotape. There is nothing material to Thompson's guilt or innocence contained in this portion of the videotape that was not included in Royal's live testimony. Consequently, the admission of that portion of the

6

videotape had no affect on Thompson's substantial rights, and any error in its admission was harmless and does not constitute reversible error. We overrule Thompson's sole appellate issue.

**CONCLUSION**

We affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:   January 30, 2013

Do Not Publish