**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00126-CR**
_____

**BRYON CRAIG MATHIS SR. Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-02-01200 CR**

**MEMORANDUM OPINION**

A jury convicted appellant Bryon Craig Mathis Sr. as a habitual felony offender of forgery and tampering with evidence and assessed punishment at twenty-five years of confinement for each offense, with the sentences to run concurrently. In his sole appellate issue, Mathis challenges the sufficiency of the

1

evidence supporting his convictions.[1] We affirm the trial court's judgments of conviction.

Matt Barrett, the general manager of Spring Creek Barbeque in Shenandoah when the offenses occurred, testified that he received training in recognizing counterfeit bills. Barrett explained that managers are trained to use a counterfeit pen and to check for the security thread in bills. Barrett encountered Mathis when Mathis approached him to pay for a to-go order at the register, and prior to that encounter, Barrett had observed Mathis sitting in a booth. At the register, Mathis presented Barrett with a hundred-dollar bill, which Barrett testified looked suspicious because it was very dark green. Barrett asked Mathis to wait, and Barrett went to the back of the kitchen to examine the bill. When Barrett held the bill up to the light to check the security strip, he noticed that the bill had Abraham Lincoln's face on it instead of Benjamin Franklin's, and the security strip said "U.S. 5[.]" When Barrett returned to Mathis, Mathis asked Barrett about the cause of the delay, and Barrett told Mathis that the bill was "fake[.]" Barrett testified that Mathis then grabbed the bill from his hand and "proceeded to walk out of the

_____

[1]In one portion of his brief, Mathis contends the trial court erred by not suppressing all evidence obtained subsequent to the traffic stop. However, Mathis neither raises an appellate issue pertaining to the trial court's admission of said evidence nor provides argument, record references, and supporting authorities in his brief. Accordingly, we do not address this argument. *See* Tex. R. App. P. 38.1(i).

restaurant." According to Barrett, Mathis did not seem shocked or embarrassed, did not claim that the bill was genuine, and did not offer another form of payment.

Barrett followed Mathis through the restaurant as Mathis was leaving, and he saw Mathis walk across the street into a shopping center, where a Buffalo Wild Wings restaurant is located. Barrett did not see Mathis discard anything. Barrett saw a police officer driving along the service road in front of Spring Creek Barbeque, and Barrett ran out and told the officer that Mathis had "tried to pass us a fake bill." Barrett described Mathis to the officer and told the officer that Mathis had grabbed the bill and walked to the shopping center. Subsequently, the police came to the restaurant and asked Barrett to identify the suspect, who was in the squad car. Barrett testified that he immediately recognized the suspect, Mathis, as the same person who had come into the restaurant.

Kiana Daniel, a cashier at Buffalo Wild Wings on the date of the offenses, testified that she took a large to-go order from an "African American woman with some beauty marks on her face." Daniel explained that the woman's order would typically feed four to five people. Daniel testified that the woman was fidgety, talked fast, and seemed to be in a hurry. Daniel testified that the woman handed her a hundred-dollar bill, which looked odd because it was all black and its magnetic strip said five instead of one hundred, so Daniel took the bill to the back.

3

According to Daniel, the face on the bill was Abraham Lincoln's rather than Benjamin Franklin's. Daniel told the woman that she needed to get change from the back, and she took the bill to the managers, who immediately called the Shenandoah police. Daniel identified State's Exhibit 4-A as the same bill she received from the woman. Daniel subsequently identified the woman, and she testified that Mathis was sitting beside the woman in the police car during the identification.

Officer Jeremy Thompson, a patrol officer for the City of Shenandoah Police Department, testified that he responded to a call from Buffalo Wild Wings restaurant in the Portofino shopping center concerning a person attempting to buy food with a counterfeit hundred-dollar bill. After meeting with Daniel and obtaining a description, Officer Thompson radioed the description to other officers in the area. According to Officer Thompson, the general manager of Spring Creek Barbeque ran over and described a taller black male wearing a baseball hat, T-shirt, and jeans, who had just attempted to purchase food with a fake hundred-dollar bill, so Officer Thompson also radioed that information. Officer Thompson received the hundred-dollar bill from Daniel and took it into evidence. Officer Thompson examined the bill and observed that it did not have a watermark on the end, and it

4

appeared to have been made from a five-dollar bill. The counterfeit bill was admitted into evidence at trial.

Sergeant Gary Sharpen, who was farther down in the parking lot of the Portofino shopping center, radioed back that he had seen two suspects who matched the descriptions. Sergeant Sharpen saw the suspects get into a vehicle and radioed Officer Cody Harmon regarding the suspects' direction of travel, and Officer Harmon subsequently stopped the vehicle because it matched the vehicle Sergeant Sharpen described. Eventually, Officer Thompson went to the traffic stop to assist with detaining four suspects, one of whom was Mathis. Sergeant Sharpen also went to the traffic stop to assist, and he spoke with all four suspects. Mathis told Sergeant Sharpen that he and the other suspects were driving to Huntsville, but Sergeant Sharpen knew the vehicle had come from the shopping center. One of the suspects initially told Officer Harmon that they had come from Taco Cabana, and then they told Officer Harmon that they were traveling to Huntsville. Mathis told Officer Harmon that he had gone into Spring Creek Barbeque to use the restroom.

Mathis matched the description Barrett had provided, and Officer Harmon found a white baseball cap matching the cap Barrett had described near the area of the vehicle where Mathis was sitting. Mathis did not have any counterfeit bills in his possession. Officer Thompson and other officers transported the suspects back

5

to Buffalo Wild Wings and Spring Creek Barbeque for identification. Daniel identified the female suspect as the woman who proffered the counterfeit hundred-dollar bill at Buffalo Wild Wings, and Barrett identified Mathis as the male who had proffered the counterfeit hundred-dollar bill at Spring Creek Barbeque. The DVD recordings from Officer Harmon's vehicle were admitted into evidence at trial and played for the jury. Officer Harmon testified that on one of the recordings, a male voice said, "I gave him the 100-dollar bill. He said it was fake. So I took [it] back from him and took off running." Officer Thompson searched the Spring Creek Barbeque parking lot and the street between Spring Creek Barbeque and Buffalo Wild Wings, but he did not recover the counterfeit bill Mathis had proffered to Barrett.

U.S. Secret Service Special Agent Mark Phillips testified that the Secret Service investigates all crimes that affect the nation's financial infrastructure, including counterfeiting. Special Agent Phillips explained that he received training in detecting counterfeit bills at the Secret Service Academy. According to Special Agent Phillips, the bill recovered from Buffalo Wild Wings and offered into evidence is counterfeit, and he opined that the bill had been bleached. Special Agent Phillips described the bill as "a washed $5 bill[,]" which he testified means that the bill had been placed into solvent to eat away the ink and a different

6

denomination had then been reprinted onto the bill. According to Special Agent Phillips, "it doesn't take much training for someone who handles currency on a frequent basis to very quickly verify that this bill is, in fact, counterfeit."

Mathis challenges the legal and factual sufficiency of the evidence supporting his convictions. "We treat a point of error complaining about a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence." *Williams v. State,* 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). The "*Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We assess all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. The jury is the ultimate authority on the

7

credibility of witnesses and the weight to be given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).

A person commits the offense of forgery if he forges a writing with intent to defraud or harm another. Tex. Penal Code Ann. § 32.21(b) (West 2011). "Writing" includes money. *Id*. § 32.21(a)(2)(B). In this case, Mathis was indicted for forgery by possessing a writing, specifically, a counterfeit hundred-dollar bill, that was altered, made, completed, executed, or authenticated so that it purports to be the act of the U.S. Treasury, who did not authorize the act. *See id*. § 32.21(a)(1)(A)(i), (C), (2)(B), (b). A person commits the offense of tampering with evidence if, knowing that an offense has been committed, he alters, destroys, or conceals a document or thing, with intent to impair its availability as evidence in any subsequent investigation or official proceeding related to the offense. *Id*. § 37.09(d)(1) (West Supp. 2012). In this case, Mathis was indicted for altering, destroying, or concealing the counterfeit hundred-dollar bill.

Proof of the existence of a culpable mental state frequently depends upon circumstantial evidence. *Lee v. State*, 21 S.W.3d 532, 539 (Tex. App.—Tyler 2000, pet. ref'd); *Morales v. State*, 828 S.W.2d 261, 263 (Tex. App.—Amarillo 1992), *aff'd*, 853 S.W.2d 583 (Tex. Crim. App. 1993). Generally, the culpable mental state must be inferred from the accused's acts or from the surrounding

circumstances, including the accused's words and conduct. *Montgomery v. State*, 198 S.W.3d 67, 87 (Tex. App.—Fort Worth 2006, pet. ref'd); *Lee*, 21 S.W.3d at 539-40; *Morales*, 828 S.W.2d at 263.

The jury heard evidence that Mathis presented a counterfeit hundred-dollar bill to Barrett, who had been trained in recognizing counterfeit bills, and that upon being told by Barrett that the bill was counterfeit, Mathis "grabbed" the bill and left the scene. The jury further heard evidence that Mathis did not seem shocked or embarrassed, did not dispute that the bill was counterfeit, and did not offer another form of payment.

The jury also heard evidence that Barrett identified Mathis as the male who had proferred the counterfeit hundred-dollar bill. In addition, the jury heard evidence that when Mathis was apprehended, he was with a female, who was identified by Daniel as the woman who presented a counterfeit hundred-dollar bill at Buffalo Wild Wings. When Officer Harmon stopped the suspects, the suspects, including Mathis, offered conflicting stories about where they had been, where they were going, and the reason for entering Spring Creek Barbeque. The jury heard Barrett's testimony that the bill Mathis offered looked suspicious because of its dark green color, Lincoln's face was on the bill instead of Franklin's, and the security strip on the bill said "U.S. 5[.]"

9

Moreover, the jury heard evidence that although Mathis "grabbed" the counterfeit bill and left the restaurant, the counterfeit bill was not in Mathis's possession when Officer Harmon stopped the suspects, and although Officer Thompson searched the Spring Creek Barbeque parking lot and the street between Spring Creek Barbeque and Buffalo Wild Wings, he did not recover the bill. Furthermore, the jury heard evidence that on the video from Officer Harmon's car, a male voice stated, "I gave him the 100-dollar bill. He said it was fake. So I took [it] back from him and took off running." Finally, the jury heard Special Agent Phillips's testimony that the bill the female suspect proffered at Buffalo Wild Wings is counterfeit and could be quickly identified as such by someone who frequently handles currency.

Viewing the evidence in the light most favorable to the verdict, a rational jury could have concluded beyond a reasonable doubt that Mathis was guilty of forgery and tampering with evidence. *See* Tex. Penal Code Ann. §§ 32.21(a)(1)(A)(i), (c), (2)(B), (b), 37.09(d); *Hooper*, 214 S.W.3d at 13; *Montgomery*, 198 S.W.3d at 87; *Lee*, 21 S.W.3d at 539-40; *Morales*, 828 S.W.2d at 263. Accordingly, we overrule Mathis's issue and affirm the trial court's judgments of conviction.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on August 9, 2013
Opinion Delivered September 4, 2013
Do Not Publish

Before McKeithen, C.J., Gaultney and Kreger, JJ.