**Susanna ARROYO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–06–00039–CR.**

Court of Appeals of Texas,
Tyler.

June 29, 2007.

Rehearing Overruled Aug. 22, 2007.

Discretionary Review Refused
Nov. 14, 2007.

Jeff L. Haas, for appellant.

Michael J. West, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

BRIAN HOYLE, Justice.

Susanna Arroyo appeals from her conviction for capital murder. In seven issues, she argues that the evidence was insufficient to support the conviction and that the trial court should have excluded evidence of her gang affiliation and the statements of a coconspirator. We affirm.

### BACKGROUND

On July 1, 1999, Jeffrey Adam Carrier and his friend Aaron Warren went to Kiloland Park, a landing on Lake Palestine. They introduced themselves to a group who was already there, which included Hersain Gomez, Crystal Garcia, Appellant, and three others. Appellant and her group had traveled together to Kiloland Park and spent the day drinking alcohol, smoking marijuana, swimming, and listening to music. Carrier asked the group if he could purchase marijuana from them. They did not have any marijuana left, but someone in the group told Carrier that if he would return later that evening, they would go to Tyler with him and help him find a dealer. Carrier agreed, and he and Warren left the landing. The group, excluding Garcia at this time, began planning to rob the two boys when they returned.

As instructed, the two boys returned to Kiloland Park later that evening. The group's car battery was dead, and so Warren, Carrier, and a member of the group left in Carrier's car to find jumper cables. While they were gone, the remaining members of the group, Garcia and Appellant included, resumed their planning of the robbery of the two boys. Hersain stated that they should just kill the two boys because aggravated robbery and murder both had essentially the same range of punishment. No one voiced opposition to that plan, and Appellant said she was "down with" Hersain's plan. Subsequently, the others returned and were able to start the car. The group and the two boys left Kiloland Park in two cars.

They traveled to a remote area in the far southern reaches of the city of Tyler. Once they arrived, two members of the group took Warren in their car, telling the boys that the person they were to purchase marijuana from did not like large groups of people at his house. The rest of the group, including Appellant, remained with Carrier by his car. At Hersain's instruction, Garcia used a knife to puncture two of the tires on Carrier's car.

Garcia told Carrier about the flats, and Carrier exited the car and got out the spare tire and the related tools. While Carrier was kneeling down to work on the flattened tire, Hersain picked up the spare tire and threw it at Carrier's head. Carrier stood up, and he and Hersain began to fight. Carrier was apparently getting the best of Hersain. That ended when Appellant hit Carrier with the car jack. Carrier fell to the ground and Hersain and Appellant continued to beat him. At one point, Carrier kicked Appellant in the leg. This angered Garcia. She began to kick Carrier as he lay on the ground and then picked up the tire iron and hit Carrier with it a number of times.

Hersain and Appellant dragged Carrier from the roadside into the nearby wooded area. Garcia proceeded to steal items from Carrier's car. At one point Hersain called Garcia to the edge of the woods and asked her to give him the knife she had used to puncture the tires. Garcia could hear Carrier moaning in the woods, and she retrieved the knife and gave it to Hersain. Garcia did not witness what happened next, but the knife blade was recovered from Carrier's lifeless torso, the handle broken off and lying nearby.

The others returned, having assaulted Warren, taken his money, and left him at a spot farther down the road. The group drove back to Tyler together and dispersed. Hersain and Appellant fled to Mexico. Michael Thompson, one member of the group, contacted the police and notified them of the murder. The police arrested him along with Garcia and the rest of the remaining group.

Appellant was charged with the capital murder of Jeffrey Carrier. She was captured in Mexico several years after the murder and returned to Smith County for trial. She pleaded not guilty. The jury found Appellant guilty of the capital murder of Carrier, and she received the mandatory punishment of imprisonment for life. This appeal followed.

### ACCOMPLICE TESTIMONY

In her first and second issues, Appellant contends that the testimony of Crystal Garcia is not sufficiently corroborated. Although she phrases her argument in terms of legal and factual sufficiency, Appellant's argument is that the accomplice testimony is not corroborated as required by law and that the nonaccomplice testimony does not tend to link her to the commission of the offense.

### Applicable Law

▮ A conviction may not be sustained on the testimony of an accomplice unless there is other evidence "tending to connect the defendant to the offense committed." TEX.CODE CRIM. PROC. ANN. 38.14 (Vernon 2006); *Simpson v. State*, 181 S.W.3d 743, 753 (Tex.App.-Tyler 2005, pet. ref'd). The corroborating evidence need not directly connect the defendant to the crime or be sufficient by itself to establish guilt, but it must do more than merely show the commission of the offense. TEX. CODE CRIM. PROC. ANN. 38.14; *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex.Crim.App. 2002). The requirement of Article 38.14 is fulfilled if the combined weight of the nonaccomplice evidence tends to connect the defendant to the offense. *See Cathey v. State*, 992 S.W.2d 460, 462 (Tex.Crim.App. 1999). The corroborating evidence may consist of circumstantial evidence. *See Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim.App.1991).

Even apparently insignificant incriminating circumstances may provide sufficient corroboration. *Trevino v. State*, 991 S.W.2d 849, 852 (Tex.Crim.App.1999). The mere presence of the accused in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony. *See Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex.Crim.App.1996). Evidence of such presence, however, coupled with other suspicious circumstances, may tend to connect the accused to the offense. *Id.*

To evaluate whether there is sufficient corroborating evidence, we eliminate the accomplice testimony from our consideration and examine the record to ascertain whether the remaining evidence tends to connect the defendant with the offense. *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim.App.1997). The accomplice witness

rule is a statutorily imposed sufficiency review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards. *Vasquez,* 67 S.W.3d at 236.

### Analysis

■ Crystal Garcia was an accomplice to Carrier's murder as a matter of law because she was charged with the same offenses as Appellant. *See Burns v. State,* 703 S.W.2d 649, 651 (Tex.Crim.App.1985). Appellant does not argue that any other witness was an accomplice. Eliminating Garcia's testimony from our consideration, there remains ample evidence connecting Appellant to the offense. The evidence includes the following:

1) Aaron Warren identified Appellant as part of the group that took him and Carrier to South Tyler.

2) Warren further testified that he ran back to Carrier's car after he was left on the side of the road. Consistent with Garcia's testimony, he found the car with two tires punctured and Carrier and the group gone. (Carrier was likely already dead, lying nearby in the woods.)

3) Appellant and Hersain discussed the murder with Benito Gomez, Hersain's brother. Appellant said that "it just happened" and that she had taken a watch, presumably from the victim. Hersain said more, including that he had hit Carrier and that he had killed him.

■ In assessing the strength of a particular item of nonaccomplice evidence, we examine its reliability or believability and the strength of its tendency to connect the defendant to the crime. *See Herron v. State,* 86 S.W.3d 621, 632 (Tex.Crim.App. 2002). Warren's testimony appears to be reliable, although he initially told the police different stories in an attempt to hide the fact that he and Carrier had been

trying to purchase drugs. Its tendency to connect Appellant to the crime is relatively high, as it places Appellant with the victim immediately before he was killed. Both Hersain's and Appellant's statements to Benito admitting to the murder connect Appellant to the crime directly, although they are undermined to some extent by Benito's inability to recollect events or his reluctance to testify.

In *Burks v. State,* 876 S.W.2d 877, 888 (Tex.Crim.App.1994), the court of criminal appeals held that a sufficient connection to the crime was made where the nonaccomplice evidence showed the defendant to have been near the crime scene an hour before the crime, the defendant had a weapon similar to the murder weapon, the defendant was looking for bullets, the defendant engaged in an incriminating conversation, and he attempted to evade the police. This case is similar to *Burks* inasmuch as there is a connection of Appellant to the situs of the offense, and there are incriminating statements after the fact as well as flight.

This case is distinguishable on the facts from *Wincott v. State,* 59 S.W.3d 691 (Tex. App.-Austin 2001, pet. ref'd), the principal case advanced by Appellant. In that case, the corroborative evidence did little more than place the defendant in the company of the accomplices. The court held that such evidence was proof of association but did not link the defendant to the crime. *Id.* at 702. This case is different in that Warren's testimony places Appellant at the scene of the offense minutes before Carrier was killed and Appellant's statement to Benito provides a direct link to the offense. The nonaccomplice testimony need only tend to link Appellant to the offense. *See* Tex.Code Crim. Proc. Ann. 38.14. The connection here is stronger that the mere associative link in *Wincott* and is at least as powerful as the links in *Burks.* Appel-

lant was present immediately before the offense, she made incriminating statements, and she had property, the watch, that could have come from the offense. This links her not just to the other actors, but to the offense itself. We overrule Appellant's first and second issues.

## GANG AFFILIATION

In her third issue, Appellant argues that the trial court erred when it allowed the State to introduce evidence of her gang affiliation. Appellant argues that this evidence was irrelevant and that its probative value did not outweigh its prejudicial impact.

### *Standard of Review and Applicable Law*

■ We review a trial court's decision to admit evidence for an abuse of discretion. *Casey v. State*, 215 S.W.3d 870, 879 (Tex.Crim.App.2007); *Caddell v. State*, 865 S.W.2d 489, 492 (Tex.App.-Tyler 1993, no pet.). A trial court abuses its discretion when its decision to admit evidence lies outside the zone of reasonable disagreement. *Casey*, 215 S.W.3d at 879.

Relevant evidence is admissible. TEX.R. EVID. 402. Evidence is relevant if it has a tendency to make the existence of any fact that is of consequence more or less probable than it would be without the evidence. TEX.R. EVID. 401. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX.R. EVID. 403. Evidence that does not have relevance apart from character conformity is inadmissible. TEX.R. EVID. 404(b).

With respect to evidence of gang involvement specifically, we have previously discussed related issues in appeals by two of Appellant's codefendants. In *Thompson v. State*, 54 S.W.3d 88, 98 (Tex. App.-Tyler 2001, pet. ref'd), we held that admission of evidence of gang affiliation was proper because the State had shown that the gang in question engaged in violent acts, which tended to show that Thompson should have anticipated Carrier's death in the course of the conspiracy to rob him. In *Martinez v. State*, 147 S.W.3d 404, 409-10 (Tex.App.-Tyler 2001), *rev'd on other grounds*, 98 S.W.3d 189 (Tex.Crim.App. 2003), we held that the gang related evidence was irrelevant because the State failed to introduce evidence showing any violent activities in which the gang was known to have engaged.

### *Analysis*

Appellant acknowledges *Thompson*, but seeks to differentiate it on the ground that nonaccomplice testimony, including Thompson's own statement, linked Thompson to the common scheme or plan with the gang. She argues that there was no nonaccomplice testimony about her involvement, it was not shown that she was a member of the gang, there was not reliable evidence that she conspired to rob the victim, and it was not shown that Carrier's murder was gang activity.

We do not agree that this case is distinguishable from *Thompson* on the grounds of nonaccomplice testimony. Whether there is accomplice testimony does not factor into the decision to admit gang evidence. It is true that Thompson made a statement to the police that corroborated the accomplice testimony. *See Thompson*, 54 S.W.3d at 94. Most of that same evidence was provided in this case either by Crystal Garcia or by other witnesses. There was ample evidence connecting Appellant to the gang and their plan. This case is not distinguishable from *Thompson* on the grounds that testimony linking Appellant to the gang or their plan was lacking.

■ If there were an issue about gang tattoos and actual membership in the gang, *Thompson* could be distinguished on those grounds. Thompson had tattoos that were, without serious dispute, related to gang membership. By contrast, Appellant argues that the tattoo on her hand, which had apparently been removed prior to trial, was not a gang tattoo and that she was not a gang member. But resolution of whether Appellant was an actual gang member is not the most important part of this inquiry. The issue is how predictable the conduct of the gang members was. *See Thompson*, 54 S.W.3d at 98–100. Garcia testified that she and Appellant were both associates of the North Side Crips gang and that girls or women could not be members of the gang. There was evidence of the violent activities of this gang. In light of the testimony, and in terms of *Thompson*, the evidence showing Appellant's association with, if not membership in, the North Side Crips was relevant to show that Carrier's death should have reasonably been anticipated as a consequence of the conspiracy.

■ With respect to Appellant's argument that there was insufficient evidence to show that the killing was gang related or that she was involved in the conspiracy, we disagree. The gang evidence was not admitted to show that the murder was gang activity. It was admitted to show that it was predictable that a homicide would occur as the result of a conspiracy to rob someone in which some of the conspirators are violent gang members. And there was evidence that she was involved in the conspiracy. Crystal Garcia testified that Appellant said she was "down with" Hersain's plan.

■ Finally, the trial court's ruling that the probative value of this evidence is not outweighed by its prejudicial impact is not outside the zone of reasonable dis-

agreement. There is a danger of unfair prejudice when it comes to this kind of evidence because criminal street gangs, and those associated with them, are not held in high regard. In this case, however, we think the prejudicial impact is less than it could be in another case. Whether gang members or not, the group of people Appellant associated herself with were not people the jury was likely to hold in high regard. They met the two boys because they were breaking the law (smoking marijuana) and they made the arrangements that led to Carrier's murder by agreeing to break more laws (brokering a marijuana transaction.). Indeed, the boys selected the group because they believed that the group had access to controlled substances. Furthermore, Hersain's nickname was "Demon," and he had that moniker tattooed across the back of his shaved head. Finally, the group engaged in a brutal murder to facilitate a petty robbery. Explaining to this jury that they were members of a street gang helped the jury understand the organizational structure of the group—and is why the evidence was relevant—but it was not the jury's first notice that they were not benevolent actors—which is why it is not unduly prejudicial. We overrule Appellant's third issue.

### STATEMENTS OF COCONSPIRATOR

In her fourth, fifth, sixth, and seventh issues, Appellant argues that the trial court erred when it allowed into evidence statements made by Hersain Gomez the night of the murder. Specifically, she argues that she was denied her right to confront witnesses as guaranteed by the U.S. and Texas constitutions and that the evidence was inadmissible hearsay.

### *Applicable Law*

■ The Confrontation Clause of the Sixth Amendment provides that "[i]n

all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Confronting a witness means, in the context of testimonial evidence, that the defendant must be permitted to cross examine the witness. *See Davis v. Washington,* 547 U.S. 813, ————, 126 S.Ct. 2266, 2273–74, 165 L.Ed.2d 224 (2006). Where the declarant is unavailable, a testimonial statement by a declarant is admissible only if the defendant has had a prior opportunity to cross examine the witness. *Crawford v. Washington,* 541 U.S. 36, 59, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177 (2004).[1]

■■■■■ Testimonial statements include police interrogations and ex parte in-court testimony or its functional equivalents, including extrajudicial statements contained in formalized testimonial materials, prior testimony at a preliminary hearing, before a grand jury, or at former trial. *See id.,* 541 U.S. at 52, 124 S.Ct. at 1364. Whether a statement is testimonial depends on whether it was made under circumstances that would lead an objective person reasonably to believe that the statement would be available for use at a later trial. *See Davis,* 126 S.Ct. at 2273–74; *Wall v. State,* 184 S.W.3d 730, 735–36 (Tex.Crim. App.2006).

In our review, we defer to a trial court's determination of historical facts and credibility. *See Wall,* 184 S.W.3d at 742–43. We review de novo the constitutional question of whether a statement is testimonial. *Id.* Appellant makes no independent argument related to the Texas Constitution,

incorporating arguments by reference, and therefore we will assume that the protections of the Texas Constitution are no broader. *See Key v. State,* 173 S.W.3d 72, 77 (Tex.App.-Tyler 2005, pet. ref'd); *see also Russeau v. State,* 171 S.W.3d 871, 881 (Tex.Crim.App.2005).[2]

■■■■ Statements of coconspirators are not hearsay and are admissible against another coconspirator if the statement is made during the course of and in furtherance of the conspiracy. Tᴇx.R. Evɪᴅ. 801(e)(2)(E). In *Lee v. State,* 21 S.W.3d 532, 538 (Tex.App.-Tyler 2000, pet. ref'd), we distinguished between general statements by a conspirator and those in furtherance of the conspiracy. We said that statements that are made in furtherance of a conspiracy include those made (1) with intent to induce another to deal with coconspirators or in any other way to cooperate with or assist coconspirators, (2) with intent to induce another to join the conspiracy, (3) in formulating future strategies of concealment to benefit the conspiracy, (4) with intent to induce continued involvement in the conspiracy, or (5) for the purpose of identifying the role of one conspirator to another. *Id.* Conversely, statements that are not in furtherance of a conspiracy, and thus remain hearsay, include those that are (1) casual admissions of culpability to someone the declarant had individually decided to trust, (2) mere narrative descriptions, (3) mere conversations between conspirators, or (4) "puffing" or "boasts" by coconspirators. *Id.*

---

1. Hersain Gomez was at the trial. His tattoos were photographed and shown to the jury. The State does not argue that he was available for cross examination, and therefore we do not reach that question.

2. Texas courts have treated the federal and Texas confrontation clauses similarly. *See Long v. State,* 742 S.W.2d 302, 313–14 (Tex.

Crim.App.1979), *overruled on other grounds, Briggs v. State,* 789 S.W.2d 918 (Tex.Crim. App.1990); *see also Cobb v. State,* 85 S.W.3d 258, 268 (Tex.Crim.App.2002) (Broader protections in the Texas Constitution must be based upon firm support in state history or policy.).

In contrast to constitutional legal rulings, we review a trial court's decision to admit evidence over a hearsay objection for an abuse of discretion. *See Willover v. State,* 70 S.W.3d 841, 845 (Tex.Crim.App. 2002). We will not disturb the evidentiary ruling of the trial court unless it falls outside the zone of reasonable disagreement. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990).

*Analysis*

■■■ Appellant argues that Hersain's statements, as recounted by Crystal Garcia and Benito Gomez, were inadmissible.[3] Although Appellant discusses the standards related to testimonial hearsay, she does not argue that the statements are testimonial.[4] Rather, Appellant argues that her right to confrontation was violated because the statements were inadmissible hearsay. This is not a claim that is supported by the current interpretation of the Confrontation Clause. *See Davis,* 126 S.Ct. at 2273 ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.").

Only a testimonial statement causes the declarant to be a "witness" within the meaning of the Confrontation Clause. *Id.; see also Crawford,* 541 U.S. at 51, 124 S.Ct. at 1364 ("The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' "). This does not mean the Confrontation Clause can be violated only by the admission of testimonial evidence[5] or that the introduction of nontestimonial evidence can never present a Confrontation Clause violation. But we cannot accept, and Appellant has provided no authority for the proposition, that every violation of the rules of evidence, including those involving evidence that is not testimonial, is a violation of the Confrontation Clause.[6]

Appellant further argues that Hersain's statement is a confession and that confessions by an accomplice that implicate another are not a firmly rooted exception to the hearsay rule. *See Crawford,* 541 U.S. at 56, 124 S.Ct. at 1367; *Roberts v. Russell,* 392 U.S. 293, 294–95, 88 S.Ct. 1921, 1921–22, 20 L.Ed.2d 1100 (1968). But the Court in *Crawford* refers to a particular

---

**3.** We summarize the types of statements because, as the State points out, Appellant has not identified the statements except to reference the testimony of the two witnesses. The State urges that this failure to cite to the record waives this issue. We will address the issue despite the lack of direct citation to the record.

**4.** Statements of a coconspirator in furtherance of a conspiracy are not, in the ordinary case, testimonial. *See Crawford,* 541 U.S. at 56, 124 S.Ct. at 1367 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial-for example, business records or statements in furtherance of a conspiracy."); *King v. State,* 189 S.W.3d 347, 359 (Tex.App.2006); *Wiggins v. State,* 152 S.W.3d 656, 659 (Tex.App.-Texarkana 2004, pet. ref'd).

**5.** *See, e.g., Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

**6.** Under *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), admission of hearsay that did not bear an "indicia of reliability" violated the Confrontation Clause. *See also Key v. State,* 173 S.W.3d 72, 77 (Tex.App.-Tyler 2005, pet. ref'd). Appellant argues that *Crawford* overruled the *Ohio v. Roberts* "indicia of reliability" test. Even if the Supreme Court did overrule *Roberts,* it certainly did not hold that the Confrontation Clause is violated every time inadmissible hearsay is admitted. *See Crawford,* 541 U.S. at 68, 124 S.Ct. 1354, S.Ct. at 1374 ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law . . . .)."

species of confession. In discussing this issue, the Court discusses prior testimony and quotes from *Lilly v. Virginia*, 527 U.S. 116, 134, 119 S.Ct. 1887, 1899, 144 L.Ed.2d 117 (1999) (plurality opinion) as follows: "[A]ccomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule." *Crawford*, 541 U.S. at 58, 124 S.Ct. at 1368.

▇▇▇ When the Court in *Crawford* uses the term "confession," it is referring to testimonial confessions. *Crawford*, 541 U.S. at 56, 124 S.Ct. at 1367. Hersain admitted his involvement in the murder to his brother, but his statements were not a testimonial "confession" as described by *Crawford*.[7] And, as *Crawford* makes clear, coconspirator statements made during the course and in furtherance of a conspiracy are not testimonial and are recognized as a firmly rooted hearsay exception. *See id.; Bourjaily v. United States*, 483 U.S. 171, 183, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987) ("We think that the coconspirator exception to the hearsay rule is firmly enough rooted in our jurisprudence that, under this Court's holding in *Roberts*, a court need not independently inquire into the reliability of such statements."); *Wiggins*, 152 S.W.3d at 660.

▇▇▇ Finally, Appellant argues that the trial court erred in admitting Hersain's statements because they were not, she argues, made in furtherance of the conspiracy. If the conspiracy is understood as being only to rob and to kill the boys, the conspiracy had ended at the time Hersain asked his brother to help him and Appellant escape to Mexico. *See, e.g., Krulew-*

itch *v. United States*, 336 U.S. 440, 442–43, 69 S.Ct. 716, 717–18, 93 L.Ed. 790 (1949) (Extrajudicial statements made after end of conspiracy and after principals had been arrested were not in furtherance of conspiracy.); *Lee*, 21 S.W.3d at 538 (statement not in furtherance of conspiracy). But if the conspiracy is treated more broadly, as an agreement to commit a robbery and murder and to escape capture, or as a second conspiracy to escape capture, the statements can be understood as being part of a conspiracy. The statements to Benito were not idle boasts or mere narrative descriptions of what had happened. Hersain was telling Benito what had happened to impress upon him the importance of his and Appellant's flight from the jurisdiction.

The exception to the hearsay rule for coconspirator statements is a "very narrow" one. *See Byrd v. State*, 187 S.W.3d 436, 440 (Tex.Crim.App.2005) (citing *Wong Sun v. United States*, 371 U.S. 471, 490, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). But there can be a conspiracy to hinder apprehension. *See Byrd*, 187 S.W.3d at 443 (Holding that conversation did not advance conspiracy to hinder apprehension.). The statements here came fairly closely on the heels of the actual murder and were related to the initial flight from the locale of the crime. Furthermore, the construct that a coconspirator's statement is adopted by the defendant/conspirator[8] is not strained in this case because Appellant was present when the statements were made and made similar statements herself. Finally, there is little question that Appellant and Her-

---

7. Appellant does not make an argument that Crystal's recounting of Hersain's statements was erroneously admitted, and her trial counsel specifically declined to make a hearsay objection, stating, "I understand that they [coconspirator statements] are excluded from hearsay under [Rule] 801."

8. *See, e.g., Byrd*, 187 S.W.3d at 440 (Coconspirator exemption from the hearsay rule is based on agency principles, the underlying notion being that a conspiracy is a common undertaking where the conspirators are agents of one another and where the acts and statements of one can be attributed to all.)

sain were working together to avoid being apprehended and that Hersain's statement was made to help them escape the jurisdiction.

In this regard, *Byrd* is instructive. In *Byrd*, an actor made two statements. One was the enunciation of a plan for one party to accept responsibility to protect another participant. The other was a question about why one participant had hit the victim. The court held that the first was properly admitted and the second was not. The differentiating feature was that the first statement advanced the conspiracy to escape apprehension or punishment and the second did not. *Id.* at 442–44. The statement here fits into the first category. Hersain's statements advanced the conspiracy to avoid capture, and therefore the trial court's decision to allow these statements as a coconspirator statement was not outside the zone of reasonable disagreement.

■ If the statements were not made during an active conspiracy or were not in furtherance of the conspiracy, they would be inadmissible hearsay, and it would have been error to admit them. As Appellant recognizes, the admission of inadmissible hearsay is nonconstitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *Lee*, 21 S.W.3d at 538. Nonconstitutional error that does not affect substantial rights must be disregarded. *See* Tex.R.App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997).

In assessing the likelihood that the jury's decision was affected by an error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character

of the alleged error, and how it might be considered in connection with other evidence in the case. *See Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex.Crim.App.2002). Evidence of the defendant's guilt is also a relevant factor in conducting a harm analysis under Rule 44.2(b). *Id.* at 358.

■ Here, Hersain's statements had, at most, a slight effect on the jury. His statement was that he had killed Carrier. Appellant made substantially the same statement at the same time, saying that it had "just happened." Furthermore, Warren's testimony placed Appellant at the scene of the offense, and Crystal Garcia was an eyewitness to the conspiracy and the assault on Carrier if not to the actual murder. There was substantial evidence of Appellant's guilt apart from Hersain's statement, including her own statement to Benito, and therefore any error in admitting Hersain's statement was harmless. We overrule Appellant's fourth, fifth, sixth, and seventh issues.

### DISPOSITION

Having overruled Appellant's seven issues, we *affirm* the judgment of the trial court.