Opinion filed September 4, 2008












 
 
  
 
 







 
 
  
 
 




Opinion filed
September 4, 2008

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00027-CR

 __________

 

PAMELA SHAREKA LANGHAM, Appellant

 

V.

 

STATE OF TEXAS, Appellee

 



 

On Appeal from the 104th District Court

 

 Taylor
County, Texas

 

Trial Court Cause No. 15857B

 



 

                                                                   O
P I N I O N

The trial court found that Pamela Shareka Langham
intentionally and knowingly possessed less than one gram of cocaine and
assessed punishment at confinement in a state jail facility for eighteen
months.  The imposition of the sentence
was suspended, and Langham was placed on community supervision for three
years.  We affirm.








In her first two issues on appeal, Langham
challenges the legal and factual sufficiency of the evidence.  In her third and final issue, Langham asserts
that the trial court erred when it admitted, over her objection, certain
hearsay evidence.  Langham=s theory is that the trial court=s action in admitting the evidence
resulted in a denial of her right of confrontation.

When we review a claim that the evidence is
legally insufficient, we consider all of the evidence in the light most
favorable to the verdict.  We determine
whether, based on that evidence and the reasonable inferences from it, any
rational juror could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307 (1979).  When we perform a
legal sufficiency review, we are not to substitute our judgment for that of the
factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral
light.  Watson v. State, 204
S.W.3d 404, 414 (Tex. Crim. App. 2006). 
We determine whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the factfinder=s determination is clearly wrong and
manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.  Id.
at 417.  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Id.  We may not simply substitute our judgment for
that of the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000).  Unless the
record clearly reveals that a different result is appropriate, we must defer to
the jury=s
determination of the weight to be given contradictory testimonial evidence
because evaluation of credibility and demeanor is often involved in the
resolution of any conflicts.  Id.
at 8. Therefore, in matters concerning the weight and credibility of the
evidence, we must give due deference to the factfinder=s
determinations. Id. at 9.  When
conducting a sufficiency review, we consider all the evidence admitted, whether
properly or improperly. Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim.
App. 2001).








A confidential informant had given Abilene Police
Department Detective Rodney Smith information concerning a house at 5301 Encino
in Abilene.  Detective Smith conducted
surveillance on the property to verify the information given to him by the confidential
informant.  He obtained a search warrant,
and on August 3, 2005, police executed it at the Encino address.   Langham was not specifically named in the
search warrant, but she was described in it as a suspected party.  The man with whom Langham lived at the Encino
address, Charlie James Collins, was named in the warrant.  

When the warrant was executed, police found
Langham and Collins in one bedroom and another couple in the other
bedroom.  The residents were asked
whether they wished to surrender anything, and Langham told them that she had a
gun under the mattress in her bedroom. 
Langham had bought the gun for protection when she lived alone.  She did not have a clip for it, but the
police found ammunition in the bedroom that would fit the gun.  Detective Smith testified that firearms are
frequently involved in connection with drug dealing.

The police also found a safe under the bed in
Langham=s
bedroom.  Langham told the police that
the safe belonged to Collins and her. 
The key to it was in the same bedroom, and the police opened the safe
with it.  The police found a white
powdery substance (later test results showed the substance contained cocaine),
a bag of coins, and $775 in cash in the safe. 
There were powder traces along the edges of the bills.  Langham testified that she worked at Sonic.
Three others who lived in the house worked. 
They all made minimum wage.  They
gave part of their money to Langham who in turn put it in the safe.  Langham had been in the safe the night before
the warrant was issued.

The officers discovered a set of electronic scales
in the kitchen.  There was also a white
powdery substance on the weighing part of the scales.  Langham testified that she did the cooking
for the people who lived there and that the scales were used in connection with
her cooking duties. 

The police also found a plate in the kitchen area;
there was a single-edge razor blade just above the plate.  Although Langham was the cook for the house,
she recognized neither the plate nor the razor blade found in the kitchen.  The State asked Detective Smith about the
significance of finding the plate and the razor blade together.  He testified that they were used to cut crack
cocaine Afrom
larger pieces into smaller pieces, and then the crack cocaine is sold in the
smaller pieces on the streets for street prices.@  There was a powdery substance on the plate,
and it field-tested positive for cocaine and was later confirmed by a chemist
to contain cocaine. 

Langham testified that she had not noticed any
drugs in the house, had not seen drugs being cut with a razor blade, and had
not seen the scales being used to measure drugs.  She denied intentionally or knowingly
possessing cocaine on the date of the alleged offense; she also denied that
Collins was a drug dealer.  








William Larry Todsen, a forensic scientist for the
State of Texas, testified that the samples that he received tested positive for
cocaine.  The weight of the substance was
about eight milligrams total and was mostly consumed in testing.  He also agreed that a person might have those
particles in a jacket pocket and not know that they were there.

Candy Applin, also a resident at the house,
testified that she went to the house on Encino while the police were
there.  She did not really pay attention,
but she thought that the scales were still in the original box.   

Daniel Kilcrease and his wife also lived at the
Encino address.  Daniel had previous
convictions for sexual assault and credit card abuse.  He and his wife had lived at the Encino
address for about one month before the warrant was executed.  Kilcrease testified, in response to a
subpoena from the State, that Langham had seen drugs being cut and sold out of
the house and that Langham would make Aruns
for Charlie Collins.@

Langham argues that the evidence is not
sufficient, either legally or factually, to link her  to the Ainfinitesimal@ amount of cocaine on the plate and in
the safe.

In a possession of a controlled substance case,
the State is obligated to prove that the accused exercised control, management,
or care over the substance and that the accused knew that the matter possessed
was contraband.  Evans v. State,
202 S.W.3d 158, 161 (Tex. Crim. App. 2006). 
The evidence must establish that the connection between the drug and the
defendant was more than fortuitous.  Id.
at 162.  Although this proposition had
been known as the Aaffirmative
links@ rule,
the Evans court announced that the word Aaffirmative@ added nothing to the word Alinks@
and that, in the future, it would be known as the Alinks@ rule. 
Evans, 202 S.W.3d at 161-62 n.9. 


Also in Evans, the court acknowledged an
opinion from the Fourteenth Court of Appeals in which the intermediate
appellate court summarized a nonexclusive list of links that had been
recognized as sufficient, alone or in combination with others, to show that a
person possessed contraband.  Evans,
202 S.W.3d at 162 n.12.  Those links
are:  








(1)
the defendant=s
presence when a search is conducted; (2) whether the contraband was in plain
view; (3) the defendant=s
proximity to and the accessibility of the narcotic; (4) whether the defendant
was under the influence of narcotics when arrested; (5) whether the defendant
possessed other contraband or narcotics when arrested; (6) whether the
defendant made incriminating statements when arrested;  (7) whether the defendant attempted to flee;
(8) whether the defendant made furtive gestures; (9) whether there was an odor
of contraband; (10) whether other contraband or drug paraphernalia were
present; (11) whether the defendant owned or had the right to possess the place
where the drugs were found; (12) whether the place where the drugs were found
was enclosed; (13) whether the defendant was found with a large amount of cash;
and (14) whether the conduct of the defendant indicated a consciousness of
guilt.

 

Evans, 202 S.W.3d at 162 n.12 (citing Evans v. State,
185 S.W.3d 30, 35 (Tex. App.CSan
Antonio 2005, pet. granted) (citing Olivarez v. State, 171 S.W.3d 283,
291 (Tex. App.CHouston
[14th Dist.] 2005, no pet.))).  None of
these factors are a litmus test but, rather, are some factors that might Acircumstantially establish the legal
sufficiency of the evidence to prove a knowing >possession.=@  Evans, 202 S.W.3d at 162 n.12.

The officers found traces of a white powdery
substance in a safe under the bed in Langham and Collins=s
bedroom.  When the search warrant was
executed, Langham was found in that same bedroom.  She and Collins told the police that the safe
belonged to them.  The key to the safe
was in the same bedroom.  She had been in
the safe the night before the search warrant was executed.  Of the six people who lived at the house,
Langham was working at Sonic; three others were working at other minimum wage
jobs.  They all took part of the money
they earned, and Langham put it in the safe. 
In addition to the powdery substance found in the safe, there was $775
in it. 

The officers discovered a set of electronic scales
in the kitchen.  Langham bought the
scales to assist her in her cooking chores. 
Detective Smith testified that the scales were of the type that were
used to weigh small portions.  Cocaine is
typically distributed in grams.  Traces
of a powdery substance, like that on the plate, were located on the weighing
part of the scales.  The powdery
substance in the safe and on the plate contained cocaine.

Langham was present when the search was
conducted.  The cocaine was found in
places to which she had ready access: 
the kitchen area and a safe.  The
scales that were found were of the type used to weigh cocaine.  Langham had a right to be in possession of
the house where the cocaine was found B
in particular her bedroom where the safe and the gun were found as well as the
place where she did the cooking for the rest of the people living in the
house.  There was testimony that she did
know about the cutting and sale of cocaine at the house.  Langham was in possession of a sizeable
amount of cash for a household of six, only four of whom were working at
minimum wage jobs.  








It is not the number of links that is important, Abut rather the logical force of all of
the evidence, direct and circumstantial.@  Evans, 202 S.W.3d at 162.  The only testimony that contradicted that
testimony offered by the State came from Langham.  Generally, the finder of fact is the sole
judge of the credibility of the witness as well as the weight to be given to
the testimony.  It may choose to believe
or disbelieve any part of a witness=s
testimony.  Fuentes v. State, 991
S.W.2d 267, 271 (Tex. Crim. App. 1999); Sharp v. State, 707 S.W.2d 611,
614 (Tex. Crim. App. 1986).  We presume
the trier of fact resolved any conflicts in favor of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47
(Tex. Crim. App. 1993).  

We hold that under the well-known standards that
we have set out above, there is legally and factually sufficient evidence to
link Langham with the cocaine found in her house.  Any rational juror could have found beyond a
reasonable doubt that Langham exercised control, management, or care over the
cocaine and that she knew that the matter possessed was cocaine.  The first and second issues on appeal are
overruled.

In her third issue, Langham asks:  ADid
the trial court err by admitting, over [Langham=s]
proper objections, hearsay evidence that denied [Langham=s]
right to confrontation?@  We hold that it did not.

Detective Smith was allowed to testify, over
Langham=s
objection, that he had received information from a confidential informant that
persons living at 5301 Encino were operating a crack cocaine distribution
business there.  The confidential
informant mentioned Collins by name and referred to Langham by
description.  Detective Smith further
testified that the confidential informant had provided information in the past
that had led to arrests and that the confidential informant had been in the
house within the previous forty-eight hours and had seen drugs there at that
time.  Detective Smith testified that he
conducted surveillance to verify the information.  After he verified the information, he sought
and obtained a search warrant from a magistrate.  








We must first determine whether the evidence is
testimonial or non-testimonial.  Crawford v.
Washington, 541 U.S. 36, 68 (2004); Wells v. State, 241 S.W.3d 172,
175 (Tex. App.CEastland
2007, pet. ref=d).  The Supreme Court has not provided a
comprehensive definition to be used when determining whether statements are
testimonial.  Crawford, 541 U.S.
at 53-54; Wells, 241 S.W.3d at 174-75. 
Testimonial statements of a person who does not appear at trial are not
admissible unless the person was unavailable to testify and the defendant had a
prior opportunity to cross-examine that person. 
Crawford, 541 U.S. at 53-54. 
We review the issue de novo.  Lollis
v. State, 232 S.W.3d 803, 806 (Tex. App.CTexarkana
2007, pet. ref=d); Wells,
241 S.W.3d at 175.  

The Sixth Amendment to the Constitution of the
United States contains the confrontation clause and provides that, A[i]n all criminal prosecutions, the
accused shall enjoy the right . . . to be confronted with the witnesses against
him.@  The confrontation clause applies to both federal
and state prosecutions.  Pointer v.
Texas, 380 U.S. 400 (1965). 
Witnesses are those who Abear
testimony,@ meaning,
Atypically >[a]
solemn declaration or affirmation made for the purpose of establishing or
proving some fact.=@ Crawford, 541 U.S. at 51.  Thus, the confrontation clause applies only
to those hearsay statements that are testimonial.  See Crawford, 541 U.S. at 51; Arroyo v.
State, 239 S.W.3d 282 (Tex. App.CTyler
2007, pet. ref=d).  When we determine whether a statement is
testimonial, we focus on the purpose of the statement and not upon the
expectations of the declarant.  Davis
v. Washington, 547 U.S. 813, 822-23 (2006). 
Generally, if the primary purpose behind the statement is to establish
or prove events of the past that are potentially relevant to later criminal
prosecution, then the statement is testimonial. 
Id.  We look to the
objective purpose of the interview or the interrogation.  De La Paz v. State, No. PD-1168-07,
2008 WL 2437648 (Tex. Crim. App. June 18, 2008). The person giving the
information is bearing testimony.  Id.  Otherwise, the testimony is non-testimonial
and the confrontation clause is not implicated.








Here, the statements made by the confidential
informant were not given to prove events of the past in a criminal prosecution
in relation to those past events.  The
confidential informant was not Abearing
testimony.@  The confidential informant was not making A[a] solemn declaration or affirmation
made for the purpose of establishing or proving some fact@ necessary to the criminal prosecution
in this case.  Crawford, 541 U.S.
at 51.  The primary purpose in making the
statement was not to get or give testimony or its functional equivalent.  Id.; Lollis, 232 S.W.3d at
809.  The confidential informant was not
acting as a witness.  There was no
emergency as in Davis, but the absence of an emergency does not make the
statements testimonial.  Lollis,
232 S.W.3d at 810.  In Davis,
although there was an emergency, the statements were made by one who was not
acting as a witness.  Here, the primary
purpose behind the statements of the confidential informant was not to provide
testimony but to provide information to Detective Smith in order that he could
obtain a search warrant.   

Langham cites us to cases in support of her
position that were decided prior to Crawford and Davis and are,
thus, distinguishable.  See, e.g.,
Hill v. State, 817 S.W.2d 816 (Tex. App.CEastland
1991, pet. ref=d).

While not without limits, we hold that the trial
court was correct under these facts in allowing Detective Smith to testify
about the information given to him by the confidential informant because it was
non-testimonial.  See Parker v. State,
192 S.W.3d 801, 807 (Tex. App.CHouston
[1st Dist.] 2006, pet. ref=d).  We have so held on another occasion in Baca
v. State, No. 11-04-00021-CR, 2006 
WL 1495022 (Tex. App.CEastland
June 1, 2006, no pet.) (not designated for publication); see also Woods v.
State, 152 S.W.3d 105, 113-14 (Tex. Crim. App. 2004); Ford v.
State, 179 S.W.3d 203, 208 (Tex. App.CHouston
[14th Dist.] 2005, pet. ref=d).
  

Moreover, even if the trial court erred in
admitting the evidence, the error would not be reversible because beyond a
reasonable doubt the error did not contribute to the conviction or
punishment.  Tex. R. App. P. 44.2(a). 
Without repeating the evidence we have already outlined earlier in this
opinion, that evidence is legally and factually sufficient, even in the absence
of statements of the confidential informant, to support the finding of guilt.  Appellant=s
third issue on appeal is overruled.

The judgment of the trial court is affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE 

 

September 4, 2008

Publish.  See Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.