

NUMBER 13-08-00304-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RUDY LONGORIA,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

On appeal from the 105th District Court of Kleberg County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela**
**Memorandum Opinion by Justice Garza**

Appellant, Rudy Longoria, was charged by indictment with injury to a child, a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.04(a)(3), (f) (Vernon Supp. 2008). After a jury trial, Longoria was convicted of the lesser-included offense of reckless injury to a child, a state-jail felony. *See id.* § 22.04(f). The trial court subsequently sentenced

Longoria to two years' confinement in a state jail facility and assessed a $1,000 fine.[1] By two issues, Longoria argues that the evidence adduced at trial was legally and factually insufficient to support his conviction. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 18, 2007, a Kleberg County grand jury indicted Longoria on a single charge of injury to a child. *See id.* § 22.04(a)(3). The indictment provided the following, in pertinent part: "Rudy Longoria, defendant, on or about April 30, 2007, in Kleberg County, Texas, did then and there intentionally or knowingly cause bodily injury to [C.M.] a child 14 years of age or younger, by hitting [C.M.] in the head with an unknown object . . . ."

### A. State's Evidence

C.M. testified that on the night of April 30, 2007, he received a phone call from B.G., a female friend.[2] B.G. requested that C.M. come over to her house. B.G. met C.M. in the middle of an alley off of Avenue A in Kingsville, Texas. They proceeded to walk down the alley towards the house of J.J.L., B.G.'s boyfriend. Once they arrived at J.J.L.'s house, B.G. instructed C.M. to "go run through the alley." C.M. observed B.G. knocking on J.J.L.'s door as he was running towards the alley. C.M. was unsure why B.G. had instructed him to run through the alley. Once he got to the back of the alley, C.M. was "blind-sided" by two people, Longoria and his younger brother, J.L. With respect to the attack, C.M. stated the following:

---

[1] Section 12.35 of the penal code provides the punishment range for state jail felonies: "[A]n individual adjudged guilty of a state jail felony shall be punished by confinement in a state jail for any term not more than two years or less than 180 days." TEX. PENAL CODE ANN. § 12.35(a) (Vernon 2003).

[2] The record reflects that C.M. was fifteen years old at the time of trial and that he was fourteen years old at the time of the incident.

2

Q [State's counsel]:     You were blind-sided, right?

A [C.M.]:                I stumbled.

Q:                       Okay.  And where did you fall?  What happened?

A:                       I stumbled to the side and then I started fighting [J.L.], and *then all of a sudden I knew I was fighting two people at one time.*

Q:                       Okay.  Did you—did you sustain any injuries?

A:                       I—I felt something dripping down my face, and I touched it with my hands, and there was blood. So I just looked at them and I turned around and ran across—the other way and ran to the store.[3]

(Emphasis added.)  C.M. stated that he was hit on the side of his head several times although he was unable to see who struck him on the head or what weapon was used.

Razhel Ellong, an assistant manager at the Quick Pantry who was working at the store on the night of the incident, stated the following:

A [Ellong]:              Well, I was just working and I saw this young man come in bloody, with his shirt off.  And he had his shirt on his head.  He had blood all over him and he came in and I asked him if he was okay.  And he was just asking me if he could use the bathroom to clean up. . . .

        . . . .

Q [State's counsel]:     Okay.  Can you tell me what you saw and what you heard, other than what he said?

A:                       Not much, 'cause I was helping my customer. And he just came in all bloody and he just wanted to use the phone.

---

[3] The "store" was later identified as the Quick Pantry on 14th Street and Avenue B in Kingsville, Texas.

. . . .

A: Yeah, he used the phone. And I think he had called his mother. And after he hung up, I called the Kingsville Police Department and informed them that there was a child about 14, 15 years old, he had a—he was bloody, that he had a hole in his head. And then that's when they showed up. And I think his family showed up, too, and they were—they were outside. And I was just trying to help out my customer some more.

Ellong noticed that C.M. was bleeding profusely and that he left a trail of blood that led to the bathroom. Ellong testified that the blood seemed to emanate from the back of C.M.'s head.

After the police arrived, C.M. was taken to the hospital for treatment. C.M. recalled getting four stitches on his head and that his eyes, face, and nose were all swollen from the attack. C.M. testified that he had a scar on the back of his head, which was not from this attack but from "something else." On cross-examination, C.M. admitted that he hung out with members of the Crips and Bloods gangs as well as people who were in many different gangs. C.M. also acknowledged that he and J.L. did not get along.

The State called John Greif, an officer with the Kingsville Police Department, who investigated the alleged offense. Officer Greif testified that when he arrived at the Quick Pantry, C.M. was sitting on the curb in front of the store and that he had blood on his face and on his shirt. Officer Greif approached C.M. and asked him to remove the shirt that he was pressing against his head. Upon removing the shirt, Officer Grief noticed a one-inch-long gash on C.M.'s head that was bleeding profusely. C.M. told Officer Greif that Longoria and J.L. had caused the injury and that they had hit C.M. all over his body. Other than the

4

head wound, Officer Greif did not notice any other injuries to C.M. After speaking to C.M., Officer Greif investigated the alley where C.M. alleged that the attack had taken place. Officer Greif did not find any blood spots on the ground in the alley, nor did he find any weapons that could have been used during the attack. Officer Greif noted that the lighting in the alley was poor and that he could not see anything without the assistance of his flashlight. When asked about the type of object that could have caused C.M.'s head injuries, Officer Greif stated that "[i]t's gonna come from a blunt object, either a stick, pipe or even a kick to the head with a foot, a shoe foot or something like that."

Anil Patel, M.D., testified that he had treated C.M. after the incident and that he had reviewed C.M.'s medical records. With respect to C.M.'s treatment after the attack, Dr. Patel noted the following: "Yes. He had—he had, like, an abrasion on the forehead and a subdural hematoma, and he was complaining of a headache and all kinds of things, you know, after the head injury happens." Dr. Patel recalled that C.M. had a cut on his forehead, about two-and-a-half inches above his eyes and that the cut extended around C.M.'s head.

Andres Garcia, an inmate at the county jail in Kingsville, stated that he knew both C.M. and Longoria. Garcia then referenced a letter he wrote while he and Longoria were incarcerated together in the county jail. The letter primarily addressed Longoria's request that Garcia testify on Longoria's behalf in this case.[4] According to Garcia, the letter referenced an admission by Longoria that he participated in the attack on C.M. After initially speaking with Longoria and at the time Garcia wrote the letter, Garcia believed that Longoria had participated in the attack. However, after speaking with Longoria a second

---

[4] The letter allegedly authored by Garcia was not admitted into evidence.

time, Garcia recanted the statements made in the letter regarding Longoria's involvement in the attack.  At the urging of defense counsel on cross-examination, Garcia claimed that he likely misheard Longoria's initial statements about his involvement in the attack because the jail was loud and the door and window to his cell were closed.  According to Garcia, Longoria was insistent that Garcia testify on Longoria's behalf even though Garcia did not witness the attack.  Garcia also stated that C.M. was a gang member, but he was not sure if Longoria was affiliated with any gang.

## B. Longoria's Evidence

Longoria called Juan Alberto Perez to testify on his behalf.  Perez, an inmate at the Kleberg County Jail, stated that he had known C.M. for seven to eight months and that C.M. was a gang member because he wore red clothing and had a "red rag."  Perez also alleged that C.M. had tattoos commonly identified with gangs.  Perez admitted that he was an ex-member of the Texas Syndicate, a violent prison gang, and that even in "lock-down rooms," where Garcia was housed, it is possible for other inmates to talk to one another.

Next, Longoria re-called C.M. to testify.  C.M. denied knowing Perez, but acknowledged that Garcia had previously dated C.M.'s sister.  C.M. stated that there was a light in the alley which allowed him to see his attackers.  C.M. denied being affiliated with any gangs or having any tattoos.

The jury subsequently convicted Longoria of the lesser-included offense of reckless injury to a child.  *See id.* § 22.04(a)(3), (f).  The trial court sentenced Longoria to two years' incarceration in a state jail facility.  *See id.* § 22.04(f).  The trial court certified Longoria's right to appeal on April 25, 2008.  This appeal ensued.

## II. STANDARD OF REVIEW

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight and credibility of the evidence, nor do we substitute our own judgment for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Beckham*, 29 S.W.3d at 151. Instead, we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151. We must resolve any inconsistencies in the evidence in favor of the judgment. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In a factual sufficiency review, we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or the jury's verdict is against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). This Court will not reverse the jury's verdict unless we can say with some objective basis in the record that the great weight and preponderance of the evidence contradicts the verdict. *Id.* at 417.

The State is not required to present direct evidence, such as eyewitness testimony, to establish guilt. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

7

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49. The law does not require that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49.

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, a person commits the offense of injury to a child if "he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child . . . bodily injury." TEX. PENAL CODE ANN. § 22.04 (a)(3). Section 1.07(a)(8) defines bodily injury as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (Vernon Supp. 2008).

### III. ANALYSIS

By two issues on appeal, Longoria asserts that the evidence adduced at trial was legally and factually insufficient to sustain his conviction. Specifically, Longoria argues that his mere presence at the scene of the attack is not enough to sustain his conviction, and the State failed to prove that he caused the injuries to C.M. Longoria also argues that because the alley was dark and because C.M. testified that the scars on the back of his head were from "something else," the evidence is factually insufficient.

**A. Applicable Law**

Injury to a child is a result-oriented offense; thus, it is not enough for the State to

prove that the defendant engaged in conduct with the requisite criminal intent. *Bowden v. State*, 166 S.W.3d 466, 470 (Tex. App.–Fort Worth 2005, pet. ref'd); *Lee v. State*, 21 S.W.3d 532, 540 (Tex. App.–Tyler 2000, pet. ref'd). Instead, the State must also prove that the defendant caused the result with the requisite criminal intent. *Bowden*, 166 S.W.3d at 470; *Lee*, 21 S.W.3d at 540.

A person acts recklessly with respect to the result of his conduct when he is aware of, but consciously disregards, a substantial and unjustifiable risk that the result will occur. TEX. PENAL CODE ANN. § 6.03(c) (Vernon 2003); *Montgomery v. State*, 198 S.W.3d 67, 88 (Tex. App.–Fort Worth 2006, pet. ref'd). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. TEX. PENAL CODE ANN. § 6.03(c); *Montgomery*, 198 S.W.3d at 88.

The culpable mental state is generally proven through circumstantial evidence. *Bowden*, 166 S.W.3d at 470; *Morales v. State*, 828 S.W.2d 261, 263 (Tex. App.–Amarillo 1992), *aff'd*, 853 S.W.2d 583 (Tex. Crim. App. 1993). Ordinarily, the culpable mental state must be inferred from the acts of the accused or the surrounding circumstances, which includes not only acts but also words and conduct. *Ledesma v. State*, 677 S.W.2d 529, 531 (Tex. Crim. App. 1984); *Morales*, 828 S.W.2d at 263.

## B. Discussion

In reviewing the jury charge, the jury was appropriately instructed about the lesser-included offense of reckless injury to a child.[5] The jury charge provided that:

---

[5] It is undisputed that reckless injury to a child is a lesser-included offense of injury to a child. *See id.* § 22.04(a), (f); TEX. CODE CRIM. PROC. ANN. art. 37.09(3) (Vernon Supp. 2008) (providing that an offense is a lesser-included offense of a charged offense if it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission); *see also Kendall v. State*, No. 13-06-00542-

[I]f you find from the evidence beyond a reasonable doubt that on or about April 30, 2007[,] in Kleberg County, Texas, either (a) the Defendant, RUDY LONGORIA, did then and there recklessly cause bodily injury to [C.M.], a child 14 years of age or younger, by hitting him in the head with an unknown object, or (b) [Longoria's younger brother] did then and there recklessly cause bodily injury to [C.M.], a child 14 years of age or younger, by hitting him in the head with an unknown object, and the Defendant, RUDY LONGORIA, did then and there, with the intent to promote or assist the commission of the offense, solicit, encourage, direct, aid or attempt to aid [Longoria's younger brother] to commit the offense of Injury to a Child, then you will find the Defendant, RUDY LONGORIA, guilty of the lesser included offense of recklessly causing bodily injury to a [c]hild.

The jury charge further provided instructions to the jury on the law of parties. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2003) ("A person is criminally responsible for an offense by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ."); *see also Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986) ("Evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense, and encourages the commission of the offense either by words or other agreement.").

Here, the evidence adduced at trial was legally and factually sufficient to support Longoria's conviction for the lesser-included offense of reckless injury to a child. C.M. testified that he was fourteen years old at the time of the attack and that he sustained head injuries as a result of being beaten up by Longoria and J.L. using an unknown object.[6] *See* TEX. PENAL CODE ANN. §§ 6.03, 22.04(a)(3), (c)(1) (providing that a "child" is "a person 14 years of age or younger"). Officer Greif stated that C.M. identified Longoria as a participant

---

CR, 2008 Tex. App. LEXIS 3516, at *14 (Tex. App.–Corpus Christi May 15, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that reckless injury to a child is a lesser-included offense to injury of a child).

[6] C.M. identified Longoria in open court as one of the perpetrators of the attack.

in the attack in an interview shortly after the attack, thus undermining Longoria's contention that he was not a participant in the attack. Ellong observed C.M. come into the Quick Pantry with head injuries that were bleeding profusely. The medical evidence showed that the injuries C.M. sustained as a result of the fight required stitches and that the laceration extended from C.M.'s forehead to the back of C.M.'s head.

Longoria points to the following inconsistencies in the evidence to suggest that the evidence is legally and factually insufficient: (1) Officer Greif's testimony that he did not see any blood in the alley and that the lighting in the alley was poor; (2) Garcia's testimony that Longoria told him that he was present at the scene of the attack but that he did not participate in the attack; and (3) C.M.'s admission that the scars on the back of his head did not result from the attack. However, these alleged inconsistencies in the testimony were within the exclusive province of the jury to resolve. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Beckham*, 29 S.W.3d at 151. Therefore, we must defer to the jury's resolution. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.") (citing *Jackson*, 443 U.S. at 326).

We find that the cumulative effect of all the incriminating facts suggests that the jury was justified in concluding that Longoria recklessly engaged in conduct that caused bodily injury to C.M. *See* TEX. PENAL CODE ANN. § 22.04(a)(3); *see also Clayton*, 235 S.W.3d at 778 ("This standard [the legal sufficiency standard] accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. . . . [W]e determine whether the necessary

inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.") (internal quotations omitted); *Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49. We therefore conclude that the evidence supporting Longoria's conviction is legally sufficient. *See Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49. Moreover, in viewing the evidence in a neutral light, we cannot say that the jury's determination that Longoria recklessly caused C.M.'s bodily injuries is clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414-15. Therefore, the evidence is factually sufficient to support that determination. *See id.* Accordingly, we overrule both of Longoria's issues on appeal.

## IV. Conclusion

Having overruled both of Longoria's issues, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
Tex. R. App. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 14th day of May, 2009.

12