# NO. 12-19-00009-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LAYMON BILLY BLANTON,* *APPELLANT* | § | *APPEAL FROM THE 411TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *TRINITY COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Laymon Billy Blanton appeals his convictions for murder and aggravated assault with a deadly weapon. In four issues, Appellant challenges the sufficiency of the evidence supporting the murder conviction, the trial court's denial of his request for a lesser included offense charge, and the trial court's admission of certain evidence over his objection. We affirm.

### BACKGROUND

Appellant was charged by indictment with murder and aggravated assault with a deadly weapon. He pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, the undisputed evidence showed that Appellant was angry with two motorcyclists in his neighborhood—Jacob Feller and Nathan Shelton—because they made noise when passing his house. One day when they passed the house, Appellant confronted them and almost caused an accident. When Shelton regained control of his motorcycle, he parked it a short distance away and moved toward Appellant on foot. Feller remained on his motorcycle, turned around, and stopped in front of Appellant. Meanwhile, Appellant retrieved a .44-Magnum revolver from his vehicle and fired three shots. He shot Feller in the chest and fired at Shelton but missed. Feller died as a result of the gunshot.

Ultimately, the jury found Appellant "guilty" as charged and assessed his punishment at imprisonment for life in the murder case and twenty years in the aggravated assault case. This appeal followed.


## EVIDENTIARY SUFFICIENCY

In his first issue, Appellant argues that the evidence is insufficient to support a finding that he intentionally or knowingly caused Feller's death. In his second issue, Appellant argues that the evidence is insufficient to support a finding that he caused Feller's death while intending to cause Shelton's death.

### Standard of Review and Governing Law

The *Jackson v. Virginia*[1] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315-16, 99 S. Ct. at 2786-87; *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. This requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899; *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. A "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).

---

[1] 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

To prove Appellant guilty of murder as charged in this case, the State was required to prove that he intentionally or knowingly caused Feller's death by shooting him with a firearm. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2019). A person acts "intentionally" with respect to the nature or a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (West 2011). A person acts "knowingly" with respect to the nature of or circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b) (West 2011). A person acts "knowingly" with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.*

## Analysis

In Appellant's first issue, he argues that the evidence shows he was involved in a confrontation with Shelton and shot Feller while firing a shot toward Shelton. Consequently, he contends that the evidence does not support a finding that he intentionally or knowingly caused Feller's death. We disagree.

Proof of a culpable mental state almost invariably depends upon circumstantial evidence. *Lee v. State*, 21 S.W.3d 532, 539 (Tex. App.—Tyler 2000, pet. ref'd). Ordinarily, the culpable mental state must be inferred from the acts of the accused or the surrounding circumstances, which include not only acts, but words and conduct. *Id.*

In this case, there is ample evidence to support a jury finding that Appellant intentionally or knowingly caused Feller's death. After the police arrived at the scene, Appellant gave a recorded statement to Trinity County Chief Deputy Thomas Park. In the statement, Appellant relates that Feller and Shelton were "running [him] away from [his] house" for about two weeks with their motorcycle noise and he was unable to obtain help from the property owners association or the sheriff's office. Appellant said on that day, Feller and Shelton were "raising hell" and "had them pipes just racking." He said he told them to stop racking their pipes and slow down, and they

ran back to him. Appellant stated, "How in the world are people going to live in this world with people harassing them? . . . When an old man like me can't get no help, buddy I'm left on my own. And you think I'm going to go out there and fight them big burly looking sons of bitches?"

Appellant subsequently gave a recorded statement to Texas Ranger Travis Brazil. In that statement, he told Brazil that Feller and Shelton had been "harassing" him and his wife for at least three weeks. A few days earlier, they were making noise on their motorcycles. Appellant told them to slow down and quit "racking their pipes," but the men "flipped [him] the bird" and kept going. When he called the sheriff's office, they said they would assign a deputy to patrol the street, but nothing happened. At one point, Appellant built a wooden box like a duck blind and placed a dummy in it hoping this would slow the men down. Earlier on the day of the incident, Appellant asked the subdivision guard whether anything was said to the motorcyclists about the noise. The guard said that "they" did not say anything to them. However, the guard asked the motorcyclists to slow down and quit "racking them pipes," but they would nonetheless park at the gate when entering and leaving the subdivision and make noise. When Feller and Shelton drove by that day, Appellant yelled at them to slow down. The motorcycles slid, and Shelton dismounted and ran toward Appellant. Feller drove toward Appellant. Appellant fired a warning shot on the ground. Feller continued, stopped near Appellant, and said, "Old man, you fucked up now." He began to dismount, and Appellant shot him. Shelton continued running toward him. Appellant shot at Shelton but missed. Appellant told Brazil, "I don't know how I missed him." Regarding Feller, Appellant said, "I didn't point at—to miss him."

Shelton testified that he and Feller lived two streets away from Appellant. On the day of the incident, he and Feller were driving their motorcycles home from work when Appellant ran into the road and swung his hand at Feller. It appeared that Appellant had something in his hand, but Shelton did not know what it was. Feller swerved and almost hit Shelton, causing him to leave the roadway and almost wreck. Shelton parked his motorcycle, walked toward Appellant, and asked what his problem was. Appellant leaned into his vehicle, and Shelton saw a gun through the open door. Shelton began running back toward his motorcycle and then heard a shot. He saw Feller pass by on his motorcycle and turned around to watch him. Feller stopped about four to five feet from Appellant, and Appellant shot him in the chest. Shelton moved toward Feller to help him, and Appellant shot at Shelton. Nonetheless, Shelton went to Feller, laid him on his lap, and put his hand on the wound. Appellant said, "He was shot with a .44. He's going to die."

Feller died about thirty seconds later. Shelton told Appellant he would go to jail for murdering Feller. Appellant put the gun to the back of Shelton's head and said, "If I'm going to jail, I'm going to kill you, too." A woman came from across the street. Appellant pointed the gun at her, said he would kill her too if she came closer, and put the gun back to Shelton's head.

Laura Riddle testified that she and her husband were riding a golf cart in the subdivision and witnessed the shooting. Riddle saw Shelton stop his motorcycle and walk toward Appellant, who was in his yard near the road. She heard Shelton shouting and then a shot. Shelton ran toward Riddle. Feller turned around in front of Riddle, drove to Appellant, and stopped. Riddle heard a second shot and saw blood on Feller. Shelton asked Riddle and her husband to call 911. Riddle heard a third shot directed toward Shelton and the couple. Shelton ran back to Feller, repeatedly shouting, "Please, don't shoot. I'm just going to help my brother." When he reached Feller, he knelt beside him and repeatedly said, "Please don't shoot. I'm just here to help my brother." Appellant continued to point the gun at Shelton. Appellant was speaking, but Riddle could not hear what he was saying.

Lynn Anders testified that she was driving students home on her school bus when she saw Appellant standing in his yard and Shelton striding up the hill. Next, Anders saw Appellant approach his vehicle. She stopped because she could tell the men were having a verbal altercation. When Appellant left his vehicle, he had a pistol. He walked into the road, raised the gun, and fired, but the shot went over Shelton's head. Feller turned around on his motorcycle, went back up the hill, stopped, and Appellant shot him from about four to five feet away. Appellant walked to Feller and fired a third shot.

Josie Scheel testified that she was in her car behind the school bus. She heard gunshots and got out of the car to see what was happening. Scheel saw Appellant with a gun and a man on the ground. She and another person started to run toward the injured man, but Appellant pointed the gun at them and told them to stop.

Denise Hunt testified that she answered Appellant's wife's emergency call that day. Hunt talked to Appellant's wife and then Appellant, who told her that he shot and killed a man and was going to shoot another one. Appellant did not say that he was afraid for his life but that he was tired of the men coming by and harassing him.

Although we agree with Appellant that the evidence shows he was involved in a confrontation with Shelton, we disagree that this evidence precludes a finding that he intended to

kill Feller. The evidence shows that Appellant was angry with both men because of their motorcycle noise. Appellant swung his arm at Feller when he passed his house. He told Ranger Brazil that Feller spoke profanely to him and began to dismount his motorcycle just before Appellant shot him. Shelton and Anders testified that Appellant and Feller were only four to five feet apart at the time. And Appellant told Brazil that he "didn't point . . . to miss [Feller]." Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury was rationally justified in finding, beyond a reasonable doubt, that Appellant intentionally or knowingly caused Feller's death. *See id.*; ***Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789; *see also* ***Brooks***, 323 S.W.3d at 899. Accordingly, we overrule Appellant's first issue.

Regarding Appellant's second issue, defense counsel elicited testimony at trial that Feller was between Appellant and Shelton when he was shot. Based on this questioning, the State anticipated that Appellant would argue the State failed to prove Feller rather than Shelton was the intended target. Consequently, the State requested and received a jury instruction on transferred intent that read, "A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different offense was committed OR a different person was injured, harmed, or otherwise affected."

On appeal, Appellant argues that the evidence is insufficient to show that he murdered Feller under a theory of transferred intent. Because we have concluded that the evidence is sufficient to support a finding that Appellant intentionally or knowingly caused Feller's death, we need not consider whether the evidence is sufficient to support a finding that he caused Feller's death while intending to cause Shelton's death. *See* TEX. R. APP. P. 47.1. Accordingly, we overrule Appellant's second issue.

## LESSER INCLUDED OFFENSE

In his third issue, Appellant argues that the trial court erred by denying his requested instruction on the lesser included offense of manslaughter.

### Standard of Review and Applicable Law

The review of an alleged jury charge error in a criminal trial is a two-step process. ***Abdnor v. State***, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). First, an appellate court must determine whether there was error in the jury charge. *Id.* Then, if there is charge error, the court must

6

determine whether there is sufficient harm to require reversal. *Id.* at 731-32. The standard for determining whether there is sufficient harm to require reversal depends on whether the appellant objected to the error at trial. *Id.* at 732.

If the appellant objected to the error, the appellate court must reverse the trial court's judgment if the error "is calculated to injure the rights of the defendant." TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). This means no more than that there must be some harm to the accused from the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). An appellant who did not raise the error at trial can prevail only if the error is so egregious and created such harm that he has not had a fair and impartial trial. *Id.* "In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

The record must show that the defendant suffered actual harm, not merely theoretical harm. *Id.* at 174. In assessing whether the trial court erred by denying a requested defensive instruction, an appellate court must examine the evidence offered in support of the defensive issue in the light most favorable to the defense. *Farmer v. State*, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013).

We apply a two-step process to determine whether a defendant was entitled to an instruction on a lesser offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). First, we determine whether the offense qualifies as a lesser included offense under Texas Code of Criminal Procedure Article 37.09. *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). This is a question of law. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007).

Next, we determine whether there is some evidence that would have permitted the jury to rationally find that if the defendant was guilty, he was guilty only of the lesser offense. *Id.* at 536. Although the threshold showing for an instruction on a lesser included offense is low—more than a scintilla of evidence—the evidence must establish that the lesser included offense is a valid and rational alternative to the charged offense. *Id.* "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted." *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

A person commits murder, as charged in this case, if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1). As previously stated, a person

7

acts "intentionally" with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). A person acts "knowingly" with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b). A person acts "knowingly" with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.*

A person commits manslaughter if he recklessly causes the death of an individual. *Id.* § 19.04(a) (West 2019). A person acts "recklessly" with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id.* § 6.03(c) (West 2011). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

**Analysis**

The parties correctly agree that, as charged, manslaughter is a lesser included offense of murder. *See Cavazos*, 382 S.W.3d at 384; *Flores v. State*, 245 S.W.3d 432, 440 (Tex. Crim. App. 2008). Therefore, the first prong is met. Regarding the second prong, Appellant argues that he was entitled to a manslaughter instruction because there is more than a scintilla of evidence that he recklessly caused Feller's death. We disagree.

Appellant contends that the following evidence supports a finding of recklessness: (1) he fired the gun three times and missed twice; (2) he told Brazil, "I hate that this happened," (3) he constructed a duck blind to try to reduce the motorcycle noise, (4) Shelton ran around Feller, (5) the gun had to be cocked to be fired, (6) the gun had a significant amount of recoil, (7) Appellant went outside and watched every time his neighbors made noise, and (8) he waved the gun around for a few minutes after he shot Feller. None of this evidence is directly germane to the issue of recklessness. *See Bignall*, 887 S.W.2d at 24.

Furthermore, the evidence in this case precludes a rational finding of recklessness. The undisputed evidence shows that Appellant was angry with Feller and Shelton, he fired multiple shots in their direction, Feller was only four to five feet away when Appellant shot him in the chest, and Appellant told Ranger Brazil that Feller spoke profanely to him and began to dismount his motorcycle just before Appellant shot him, and he "didn't point . . . to miss him." Under the

8

circumstances of this case, we conclude the evidence does not establish that the lesser included offense is a valid and rational alternative to the charged offense. *See Hall*, 225 S.W.3d at 535; *see also Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986) ("If a deadly weapon is used in deadly manner, the inference is almost conclusive that he intended to kill"). Instead, the evidence shows Appellant intentionally shot and killed Feller, and there is no evidence in the record that would have permitted the jury to rationally find that if he is guilty, he is guilty only of manslaughter. *See Hall*, 225 S.W.3d at 536. Therefore, the trial court did not err in refusing to instruct the jury on the lesser included offense of manslaughter. *See id.* Accordingly, we overrule Appellant's third issue.

ADMISSIBILITY OF EVIDENCE

In Appellant's fourth issue, he argues that the trial court erred by admitting a photograph of Feller and his stepson.

## Standard of Review and Applicable Law

Generally, we review a trial court's decision to admit evidence under an abuse of discretion standard. *See Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). We must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We will not reverse a trial court's ruling admitting evidence unless that ruling falls outside the zone of reasonable disagreement. *See Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).

We review nonconstitutional error to determine whether it affected the defendant's substantial rights. TEX. R. APP. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). An error affects a substantial right if it had a substantial and injurious effect or influence on the verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A nonconstitutional error that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b).

## Analysis

Appellant argues that the trial court erred by admitting a photograph of Feller and his stepson into evidence during the guilt/innocence phase of trial because it was not relevant to any issue in that phase. We disagree.

Relevant evidence is generally admissible, whereas irrelevant evidence is not admissible. TEX. R. EVID. 402. Evidence is relevant if it has any tendency to make a fact that is of consequence

9

in determining the action more or less probable than it would be without the evidence. TEX. R. EVID. 401. Relevant evidence may support an elemental fact or an evidentiary fact that inferentially leads to an elemental fact. ***Montgomery v. State***, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990).

As a threshold issue, challenges to the propriety of court rulings must be preserved for appeal. ***Moore v. State***, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012). Failure to present a timely and specific request, objection, or motion to the trial court for a ruling results in waiver or forfeiture of the right to present the claim on appeal. *See* TEX. R. APP. P. 33.1; ***Mendez v. State***, 138 S.W.3d 334, 341-42 (Tex. Crim. App. 2004). A complaint is timely if it is made as soon as the ground of objection becomes apparent. ***Pena v. State***, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). An issue on appeal must comport with the objection made at trial; i.e., an objection stating one legal basis may not be used to support a different legal theory on appeal. *See* ***Clark v. State***, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); ***Rezac v. State***, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). Thus, when an appellant's trial objection does not comport with his argument on appeal, he has forfeited his right to raise the issue. *See* ***Clark***, 365 S.W.3d at 339; ***Goff v. State***, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996).

Once a trial court rules that evidence is relevant, the opponent of the evidence must make a separate objection to raise unfair prejudice under Rule 403 to preserve such error. ***Bell v. State***, 938 S.W.2d 35, 49 (Tex. Crim. App. 1996). Likewise, a separate objection must be made to preserve error under Rule 404. ***Camacho v. State***, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993).

Here, the State asked Feller's wife to identify a photograph of her son and Feller and offered it into evidence. Appellant objected that the photograph was irrelevant. The trial court overruled the objection and admitted the evidence.

On appeal, the State argues that the photograph is relevant to prove Feller's identity as the victim alleged in the indictment and that he was a living person before Appellant shot him. We agree. *See* ***Long v. State***, 823 S.W.2d 259, 271 n.18 (Tex. Crim. App. 1991) (murder victim's identity is fact of consequence in determining action). Furthermore, even if the photograph was erroneously admitted, Appellant fails to show how its admission affected his substantial rights. *See* TEX. R. APP. P. 44.2(b); ***Johnson***, 43 S.W.3d at 4. Thus, the error, if any, must be disregarded. *See* TEX. R. APP. P. 44.2(b). Accordingly, we overrule Appellant's fourth issue.

10

## DISPOSITION

Having overruled Appellant's first, second, third, and fourth issues, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered January 22, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 22, 2020**

**NO. 12-19-00009-CR**

**LAYMON BILLY BLANTON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 411th District Court

of Trinity County, Texas (Tr.Ct.No. 10592)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*